386 P.2d 795

Thad M. MOORE, William E. Stanford and Warren Petersen as members of and constituting the State Tax Commission of Arizona, Appellant,

v.

ARTHUR REALTY CORP., a corporation, dba Vendomatic Company, and Jack Gumbin and Stanley Katcher, a partnership dba Vendomatic-Ft. Huachuca, Appellees.

No. 7491.

Supreme Court of Arizona.

En Banc.

Nov. 20, 1963.

Robert W. Pickrell, Atty. Gen., Philip M. Haggerty, Asst. Atty. Gen., Phoenix, for appellant.

Johnson, Darrow, D'Antonio, Hayes & Morales, Tucson, for appellees.

LOCKWOOD, Justice.

Arthur Realty Corp., a corporation, dba Vendomatic Company, and Jack Gumbin and Stanley Katcher, a partnership dba Vendomatic-Ft. Huachuca, were plaintiffs in independent actions against the Arizona State Tax Commission to recover alleged excess amounts of transaction privilege taxes paid under protest.[1] The taxes had been imposed by the Tax Commission on the plaintiffs' business of operating vending machines. These machines dispense candy, cigarettes, coffee, milk, ice cream, soft drinks, and in one instance popcorn. The only issue in each case is which of two sections of the sales tax act should be applied in determining the proper rate applicable to plaintiffs' business.

Plaintiffs contended that (with the exception of the sales of candy and cigarettes,

---

1. Since this transaction tax is commonly called the "sales tax," for convenience only we will hereafter so refer to it.

which are not here involved), A.R.S. § 42-1313 is applicable. The State Tax Commission applied the rate set forth in A.R.S. § 42-1312. Because the same issue was involved in both cases, by stipulation of the parties, they were consolidated and the trial court held for the plaintiffs.

The two statutes pertinent to this case provide in part:

§ 42-1313 *"Sales by establishments preparing foods for consumption on premises.*

"The tax imposed by subsection A of § 42-1309 shall be levied and collected at an amount equal to one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the business of conducting restaurants, dining cars, dining rooms, lunchrooms, lunchstands, soda fountains *or similar establishments where articles of food or drink are sold for consumption on the premises* or on such dining cars." (Emphasis supplied.)

§ 42-1312 *"Tangible personal property; exceptions; classification of proceeds; sales to establishments preparing foods for human consumption.*

"A. The tax imposed by subsection A of § 42-1309 shall be levied and collected at an amount equal to

two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the business of selling any tangible personal property whatever at retail · * * *."

Sales of food or beverages from vending machines are not specifically enumerated in either section. Therefore we must look to the legislative intent to determine under which section such sales are properly classified.

In determining the intent of the legislature the Court will take into consideration the meaning naturally attaching to the words used and will adopt that meaning of words which best harmonizes with the context. Keller v. State, 46 Ariz. 106, 47 P.2d 442 (1935). The problem here is to determine whether plaintiffs' operations come within the language of § 42-1313, i. e. "similar establishments where articles of food or drink are sold for consumption on the premises." This phrase refers to the preceding enumeration of establishments i. e. "restaurants, dining cars, dining rooms, lunchrooms, lunchstands, [or] soda fountains." We will, therefore, analyze the nature of those enumerated establishments.

We had occasion to interpret another section of the sales tax act in which certain businesses or occupations were listed and

"other" businesses similar in nature were included, in White v. Moore, 46 Ariz. 48, 46 P.2d 1077 (1935).[2] The State Tax Commission attempted to impose a tax on the rental of office buildings. Their only basis for imposing the tax was the provision that there should be a tax of two per cent on:

"Hotels, guest houses, dude ranches and resorts, rooming houses, apartment houses, automobile rental services, automobile storage garages, parking lots, tourist camps or *any other business or occupation charging storage fees or rents* and adjustment and credit bureaus and collection agencies." (Emphasis supplied.) [3]

The Tax Commission urged that the phrase "or any other business or occupation charging storage fees or rents" must include office building rentals. However this Court held that it would apply the rule of ejusdem generis, i. e. that where general words follow the enumeration of particular classes of persons or things, the general words should be construed as applicable only to persons or things of the same general nature

or class of those enumerated. The Court further held that there were in the statute two groups of occupations through which ran a common thread or purpose, i. e. businesses furnishing chiefly entertainment or amusement for the public, and those supplying accommodations, either wholly or in part, for tourists or transients. It was concluded that "office buildings" were not a part of the common thread or purpose of either of these two groups of occupations, and therefore were not taxible under the general qualifying phrase "or any other business or occupation charging storage fees or rents." [4]

This is not a case where the Tax Commission is attempting to extend the imposition of a tax beyond the purview of the act, nor do plaintiffs claim that they are exempt from any privilege transaction or sales tax. However, we believe the same principle applies in determining whether plaintiffs' business operations are included in the language of § 42–1313. The provisions of paragraph D of § 42–1312, supra, which refer to the succeeding § 42–1313 furnish some illumination.[5] The

---

2. See also Peterson v. Smith, 92 Ariz. 340, 376 P.2d 865 (1962); and Alvord v. State Tax Commission, 69 Ariz. 287, 213 P.2d 363 (1950).

3. Subdivision 2, subsection (f) § 2, Ch. 77, Session Laws of 1935.

4. The legislature later added the words "office buildings" to the specific enumeration.

5. "The sale to hotels, restaurants, dining cars, lunchrooms, boarding houses or similar establishments of articles used by human beings for food, drink or condiment, whether simple, mixed or compounded, *where such articles are customarily prepared and served to patrons for consumption on the premises or on such dining cars, shall be deemed*

businesses intended to be taxed under § 42–1313 have as a common thread or purpose the furnishing of foods or beverages which are customarily prepared and served to patrons for consumption on the premises. "Preparation and service" necessarily requires an establishment where there are people who mix or otherwise prepare food or beverages and who serve it to customers in a form which is not customarily or easily carried away from the premises for later consumption. Customers normally are expected to consume the food or beverages on the premises furnished by the seller for that purpose.

This case, therefore, presents the question: Do plaintiffs' vending machine operations fall within these requirements?

According to the testimony at the trial, the machines are placed (1) at designated spots in the Hughes Aircraft plant in Tucson, and (2) at certain designated spots on government owned or controlled premises at Ft. Huachuca, Arizona. In some instances they are separated by partitions from the working areas of either the Hughes plant or the premises occupied as "day rooms" at Ft. Huachuca.[6] In some instances there are tables and chairs in the vicinity of the machines. Neither the partitions nor the tables or chairs are owned by plaintiffs, but are furnished by either the Hughes plant or those in charge of facilities at Ft. Huachuca. The type of food and beverages furnished by the vending machines are as follows: (1) Coffee. The coffee is sold from the machine in liquid form. Plaintiffs' service attendant puts coffee, fresh or instant cream and sugar in each machine. Coffee is brewed and held in a "holding pot" until a coin is inserted, in the machine. The machine then mixes and dispenses coffee black, with cream only, with sugar only, or with cream and sugar. The coffee comes out of the machine into an open disposable cup which the purchaser then removes. (2) Soft drinks. The soft drinks machine holds fountain syrup, $CO_2$ gas and refrigerated water. The machine dispenses the selected syrup flavor and the mixture of gas and water when a coin is inserted, furnishing the customer a carbonated soft drink in an open paper cup. No drinks are sold in bottles. (3) Milk and ice cream. Milk, chocolate milk, and buttermilk are sold in half-pint cartons and ice cream is sold in the form of ice cream bars, sandwiches or cones, individually wrapped in paper. The machine is refrigerated and the customer

wholesale sales as to such commodities, and the person who then resells such commodities in cooked or prepared form shall be deemed to be engaged in the business classified in § 42–1313." (Emphasis supplied.)

6. "Day rooms" are recreational rooms containing in addition to such vending machines, television sets, pool tables and other recreational facilities for the benefit of the personnel at Ft. Huachuca.

selects the type of milk or ice cream which is dispensed when a coin is inserted in the machine. No milk is sold in bottles. (4) Popcorn. The popcorn machines are operated only in the theaters in Ft. Huachuca. There is no actual vending machine; the attendant prepares and dispenses the popcorn to theater patrons.

It is evident that in plaintiffs' operations, though there is some "mixing" of the components of soft drinks or coffee with cream or sugar, the product is dispensed from the machine into a cup. The customer then removes the cup and is free to carry it to any spot where he wishes to consume it. The milk and ice cream are sold in cartons or wrapped in such a manner that they may be carried any place for consumption. In each case, the customer "serves" himself when he inserts a coin in the machine. The popcorn, although prepared by a human attendant, is transferred immediately to the consumer, who can easily carry it anywhere for consumption. The purchaser usually does carry it into the theater. We think this is no greater "service" than when a clerk in a retail store places merchandise in a sack and hands it to the customer. In none of these operations do the vending machine operators furnish a special place for the purchaser's use in consuming the product.

Plaintiffs rely heavily on the reference in § 42–1313 to establishments where articles of food or drink *"are sold for consumption on the premises."* Although they cite no cases in point to uphold their contention, they maintain that the "premises" referred to in the statute must be defined as the immediate area of the vending machines. They point out that approximately 95% of the purchasers from their vending machines consume food and beverages on the premises in the immediate vicinity where the vending machines are located. There is no doubt that in many instances the purchasers do this. However, when the purchaser "serves" himself by taking the cup of coffee, or carbonated drink, or the carton of milk or package of ice cream from the machine, he has a commodity in a form which he can easily carry to any area for consumption. It is merely a matter of choice on his part where he consumes it.

Defendant tax commission asserts that the premises referred to must be owned or controlled by the seller. It cites cases from Alabama, California, Maine and Ohio, involving statutory or constitutional provisions relating to taxes on food or beverages to be consumed "on" or "off" the premises. While none of these is directly in point, we think two cases involving vending machines have some relevance. In Alabama v. Dixie Dairies Corp., 268 Ala. 480, 107 So.2d 896 (1959) a statute exempted sales of milk products in "hotels,

restaurants, cafes, cafeterias, drug stores, grocery stores and other retail establishments where milk is served or sold for consumption on the premises or as an incident to the principal business." The Alabama court held that milk in paper cartons sold from vending machines located on premises controlled by someone other than the vending machine operator was not sold for consumption on the premises within the meaning of the statute. In Castleberry v. Evatt, 147 Ohio St. 30, 67 N.E.2d 861, 167 A.L.R. 198 (1946) milk was sold in containers from vending machines on the premises of the Wright Aeronautical Corporation and the William Powell Valve Company. The Ohio constitution exempted from any excise tax "sale or purchase of food for human consumption *off* the premises." The Ohio court held that the "premises" referred to must be under the control of the vendor.

We believe the most reasonable interpretation of the words "on the premises" as used in § 42–1313 (and Paragraph D of § 42–1312), when taken in context, is "*premises owned or controlled by the tax-payer seller.*" We hold that plaintiffs' operations are not part of the common thread or purpose of furnishing food or beverages customarily prepared and served to patrons for consumption on the premises. Hence plaintiffs' operations are not taxible under· § 42–1313. Such operations come within the language and purpose of § 42–1312. Consequently the Tax Commission correctly imposed the transaction privilege tax on plaintiffs' operations.

Judgment reversed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concurring.