429 P.2d 476

The BODCO BUILDING CORPORATION, an Arizona corporation, Appellant,

v.

ARIZONA STATE TAX COMMISSION, a public agency of the State of Arizona, and William E. Stanford, John M. Hazelett, and Waldo DeWitt, as members of and constituting said Arizona State Tax Commission, Appellees.

No. 1 CA–CIV 350.

Court of Appeals of Arizona.

June 15, 1967.

Ryley, Carlock & Ralston, by Joseph P. Ralston, Phoenix, for appellant.

Darrell F. Smith, Atty. Gen., William T. Boutell, Jr., Asst. Atty. Gen., for appellees.

DONOFRIO, Judge.

This action was argued at the same time and involves some of the questions decided in Arizona State Tax Commission v. First Bank Building Corporation (decided this date), 5 Ariz.App., 594, 429 P.2d 481, and concerns the validity of transaction and educational excise taxes assessed by the appellee, Arizona State Tax Commission, hereafter called the Commission, upon rents paid by The Arizona Bank, an Arizona Bank, an Arizona corporation, to Bodco Building Corporation, an Arizona corporation, appellant herein and plaintiff below, hereafter called Bodco, or plaintiff. At the outset it is to be noted that First Bank Building Corporation, supra, is to be distinguished from the instant case in that the bank involved therein was a national bank, whereas this case involves a state bank.

Plaintiff brought this action against the Commission for recovery of $70,438.45 in taxes paid as transaction privilege taxes under A.R.S. § 42–1301 et seq. This sum represents taxes paid on income from the rental of premises leased or subleased by plaintiff to The Arizona Bank. Plaintiff appeals from a summary judgment in favor of the Commission. The cause was submitted to the trial court on a stipulation of facts and the deposition of the senior vice-president of The Arizona Bank. The facts are undisputed, therefore this Court is free to substitute its analysis of the record for the analysis of the trial court. First Bank Building, supra. The facts to which the parties have stipulated are as follows:

Plaintiff, The Bodco Building Corporation, an Arizona corporation, is a wholly owned subsidiary of The Arizona Bank, an Arizona corporation, and a member of the state banking system, operating under the authority of the Superintendent of Banks of the State of Arizona. Bodco was organized to own or lease buildings which would be leased or subleased, all or in part, to The Arizona Bank to be used by it for banking facilities for its some forty branches. In many instances it leases the land, constructs a building and subleases it

to the bank at a rental generally based upon the cost of improvements plus six percent. Most of the structures are free-standing, single-purpose, single-story buildings, occupied entirely by the branch bank. Four of these structures have some additional space for future bank expansion, which at the present time is leased to a third person. Four of the branch banks are housed in structures which are part of a shopping center complex, leased by Bodco from the owner and subleased to the bank. Two of the buildings owned by Bodco, the home office in Phoenix and the downtown office in Tucson, are high rise buildings containing several floors. In the Phoenix home office building the basement contains safe deposit vaults and bookkeeping functions. The ground floor is the main banking room; the second floor is the trust department; the third floor contains various administrative offices as well as the Board of Directors' room; and the tenth floor is the employees' cafeteria and officers' dining room. The remaining floors in the high rise buildings are leased by Bodco to attorneys, accountants, and for other professional office uses. The Bisbee office is an office building with the banking facilities on the first floor, and a few miscellaneous rentals on the second floor. Taxes imposed on the rentals received by Bodco from nonbank occupied space in these three buildings is not included in this litigation. Such taxes have been paid without protest and no refund is sought by plaintiff.

The Commission has imposed transaction privilege taxes based on the income of Bodco from leases or subleases of all banking space to its parent organization, The Arizona Bank. It is the amount of such taxes, together with a small amount of income received from the rental of extra space in the small single-purpose buildings, which represent the taxes paid under protest and the taxes previously paid without protest, but which are included in the audit, upon which a refund is now claimed.

We first deal with the payment of taxes by plaintiff which had not been paid under protest. Bodco had paid certain of the taxes claimed invalid without making a protest as provided in A.R.S. § 42–1339. It seeks to recover this sum under the theory that it had requested an audit covering payment of taxes for the previous three years at which time it advanced the contention that the gross income from the rental of various bank premises did not constitute gross income from office buildings as that term is used in A.R.S. § 42–1314 and therefore is entitled to refund by virtue of A.R.S. § 42–1326.

■ We would hold that Bodco, having failed to follow the statutory requirements of § 42–1339 which are exclusive insofar·as the recovery of taxes herein are concerned, cannot recover under § 42–1326 which is inapplicable.

The predecessor of § 42–1326 (A.C.A. 1939 § 73–1327), was in the statute books when Smotkin v. Peterson, 73 Ariz. 1, 236 P.2d 743 (1951) was decided. The Supreme Court therein stated that where the taxing official has a semblance of authority to collect a tax, the payment under protest provisions of the statute must be followed. To quote the Court:

"* * * Section 73–1318 (A.R.S. § 42–1338–1339) of the Excise Revenue Act expressly provides that in cases such as this the taxpayer shall pay the tax under protest and sue for its recovery. This remedy is exclusive."

This position was reiterated by the Supreme Court in Southern Pacific Company v. Cochise County, 92 Ariz. 395, 377 P.2d 770 (1963):

"The rule at the common law was that taxes voluntarily paid could not be recovered, (citation omitted) * * *. Public policy discourages suits for the refund of taxes even where illegally collected. (citation omitted) * * * and if the taxpayer desires to raise a question as to his taxes he is compelled to scrupulously follow the statutory procedures, Smotkin v. Peterson, 73 Ariz. 1, 236 P.2d 743, for the refund of taxes paid is by virtue of

governmental grace rather than by reason of any legal right which the taxpayer has to such a refund. State v. Airesearch Manufacturing Co., 68 Ariz. 342, 206 P.2d 562."

See also City of Phoenix v. Phoenix Newspapers, Inc., 100 Ariz. 189, 412 P.2d 693 (1966) which passed on a similar provision with reference to the City of Phoenix Privilege License Tax.

We next turn to the validity of the tax assessments. The applicable portion of the act upon which the Commission bases its tax is found in the following portion of A. R.S. § 42–1314:

"The tax imposed by subsection A of § 42–1309 shall be levied and collected at an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

\* \* \* \* \* \*

"2. Hotels, guest houses, dude ranches and resorts, rooming houses, apartment houses, *office buildings*, automobile rental services, automobile storage garages, parking lots, tourist camps or any other business or occupation charging storage fees or rents." (Emphasis supplied.)

Plaintiff contends the terms of the act do not apply to the rentals received by it; that by leasing or subleasing premises to The Arizona Bank plaintiff is not engaged in any business enumerated in § 42–1314, supra. On the other hand, the Commission urges that the rental income was within the meaning of the transaction privilege tax and educational excise tax statutes.

This Court has decided the question of whether a wholly owned subsidiary of a bank is doing business apart from its parent corporation in First Bank Building. Insofar as it relates to the issues at hand, we would similarly rule that plaintiff, by holding title to property and dealing with the rental of buildings used as offices for benefit, is engaging in the business of office buildings within the meaning of the act, irrespective or its relationship with the parent bank. We would also hold that the relationship between the subsidiary holding company and the bank with reference to the various pieces of property are severable. As in First Bank Building, we do not pass upon a company created solely to hold title to property whose ownership and the activities therewith are passive, as distinguished from the active engaging in the ownership and rental for purposes of benefit or profit.

We turn to the question of whether plaintiff is engaged in business within the meaning of the statutes with reference to the forty some odd structures, storerooms or offices which plaintiff owns and leases or subleases.

In First Bank Building we held the act only intended to tax the income from a particular type of activity, namely, the activity of renting an office building or buildings. If "engaging in the business of office buildings" is to have any meaning to the ordinary person, when speaking of charging a transaction privilege tax, that meaning would be that the tax is on the person who engages in a business which rents offices. The act does not contemplate the taxing of a landlord in all instances where he leases real estate to a business which may use it for offices or the transaction of business. This is especially true in the situation where the business itself pays a transaction privilege tax.

Limiting ourselves to the issues created herein, we would hold that if a landlord builds or adapts an existing structure for use as offices and rents it out as such, he comes within the act. Likewise, if he leases a storeroom in a shopping center, or elsewhere, and adapts it for offices and sublets it for such, then, as sublessor, he is within the act. On the other hand, if he is the owner of a building containing many individual office spaces and rents it outright to a tenant who then operates the building and subleases to individual tenants, he is not within the act.

It is to be noted that we do not hold that a landlord who owns one piece of realty and rents it to a tenant who uses it as an office is taxable. We mean to say that he must be engaged in the business of providing office space which pre-supposes more than one tenant. We are not required to pass upon the question of casual activities mentioned in § 42–1301(2).

■ Plaintiff urges that the branch bank structures which are single-story, single-purpose, generally free-standing buildings with distinctive architectural design (photographs submitted) used as branch offices are not within the meaning of office building as intended by the Legislature. The thrust of its argument is that the Legislature made taxable only those buildings which contain multiple offices for rent to several tenants. With this we cannot agree. In First Bank Building, applying the rule of statutory construction, we held contrary to plaintiff's contention. We also discussed the meaning of the terms "office" and "buildings" and quoted definitions fitting the instant structures. We have assumed plaintiff built and equipped the structures for use as offices. Office implies a place for the regular transaction of business and is a place where service is rendered or business is done. It is not limited to a building housing numerous tenants or numerous departments of one particular tenant, although the latter would best describe a branch bank. Neither the architectural design nor the fact that it is a single-story, single-purpose, free-standing building should alone determine whether it is an office building. It may be said of banks that they have been leaders in building unique offices. Today architects, title companies, etc., and even lawyers, are following the trend. The fact that the building is devoted solely to the purposes of each of these businesses or professions does not make it any the less an office. Strong evidence of the fact that it is an office building would be the landlord's erecting the structure for such a purpose.

■ We now turn to the consideration of the several properties involved. We would hold the income taxable from each of those structures which are single-purpose buildings entirely occupied by the bank and which are leased to the bank as branch offices. In this we have assumed that the structure has been provided or built and leased especially for a branch office and that the plaintiff is receiving the rental payment as consideration therefor. Likewise we would hold valid the taxing of the income from those buildings leased as branch banks which contain additional space designed for bank expansion purposes but temporarily leased to third persons for offices. These structures have the added fact that office space was being rented to more than one tenant, e. g., to a title company for offices, and to the Arizona Western College for administrative offices, etc.

■ We would also hold taxable the income from the rental of offices in the home office building at 34 West Monroe Street, Phoenix, and the Bisbee property.

■ Finally, we pass upon those properties or storerooms leased by plaintiff from others (e. g., in shopping centers) and then subleased to the bank for branch offices. We have no difficulty in holding taxable those wherein the plaintiff leases a storeroom from a third person, remodels it into offices for branch banking purposes and thereafter leases to the bank for a consideration. We can envision, however, the building by the landowner of a structure for offices and thereafter leasing it to Bodco, who in turn would assign or pass on the lease to the bank. Therein it may become important to determine what services are provided by the respective parties in order to ascertain who is engaged in the rental of the office building. Under the state of the record, we hold taxable those properties subleased to the bank for branch offices.

We find the judgment supported by the evidence. Affirmed.

CAMERON, C. J., and STEVENS, J., concur.