429 P.2d 481

**ARIZONA STATE TAX COMMISSION**
et al., Appellants and Cross-Appellees,

**v.**

**FIRST BANK BUILDING CORPORATION,**
a corporation, Appellee and
Cross-Appellant.

No. 1 CA–CIV 322.

Court of Appeals of Arizona.

June 15, 1967.

Rehearing Denied July 31, 1967.

Review Denied Nov. 7, 1967.

Darrell F. Smith, Atty. Gen., James D. Winter and William T. Boutell, Jr., Asst. Attys. Gen., for appellants and cross-appellees.

Kramer, Roche, Burch, Streich & Cracchiolo, by Earl E. Weeks, Phoenix, for appellee and cross-appellant.

DONOFRIO, Judge.

This is an appeal by the Arizona State Tax Commission, hereafter called the commission, and a cross-appeal by First Bank Building Corporation, a corporation, hereafter called plaintiff, from a judgment awarding plaintiff the sum of $61,368.53 of the taxes which had been paid under protest, and awarding the commission the sum of $6,547.11 out of the taxes paid under protest.

The cause was submitted to the trial court on stipulated facts and exhibits furnished by the respective parties in connection with their motions for summary judgment. Inasmuch as the facts are undisputed, this Court is free to substitute its analysis of the record for the analysis of the trial court. Combustion Engineering v. Arizona State Tax Commission, 91 Ariz. 253, 371 P.2d 879 (1962); Goodyear Aircraft Corporation v. Arizona State Tax Commission, 1 Ariz.App. 302, 402 P.2d 423 (1965).

The commission had assessed the transaction privilege tax and educational excise tax, sometimes referred to as transaction

privilege tax, against plaintiff with respect to certain rental proceeds under the authority of A.R.S. §§ 42–1309 and 42–1314. These proceeds were received in connection with the rental and use of several properties owned by it which will be treated in this opinion. The action concerns the validity of this tax assessment.

Plaintiff, First Bank Building Corporation, is a corporation duly organized and qualified to do business in Arizona and all of its capital stock issued and outstanding is held and owned by the First National Bank of Arizona a national banking association. The executive committee of the bank also serves as the board of directors of the plaintiff corporation and all its officers are also officers of the First National Bank of Arizona. Plaintiff employs no personnel and all bookkeeping with respect to its books and accounts is conducted by personnel of the bank. Plaintiff holds title to the First National Bank Building located at 411 N. Central Avenue, Phoenix; the First Nation Parking Garage adjoining it to the east on North First Street, Phoenix; buildings used as banks, and in some cases for other purposes, in Cottonwood, Miller Valley, Flagstaff, Williams and Prescott; a parking lot on North Third Street in Phoenix; the O'Connell Garage at First and Taylor Streets in Phoenix; and several residences.

The First National Bank Building is a nine-story structure with several passenger and service elevators. Both the building and the land on which it is situated are owned by the plaintiff corporation and leased to the First National Bank of Arizona on a year-to-year basis. The bank occupies approximately 48 percent of the building and the remainder is occupied by tenants who lease space from the First National Bank of Arizona for varying periods of time. Plaintiff pays all the real estate taxes assessed against the property. The insurance on the building is carried by the bank which is also responsible for all repairs, maintenance and operation of the building under the terms of a lease agreement between plaintiff and the bank. Plaintiff furnishes no services to the bank or to any other tenant of the building. The bank furnishes all janitorial service, elevator service and utilities to the occupants. No transaction privilege tax is paid to the commission on rents collected from the occupants of offices in the building on the basis that the bank is exempt as a National Banking Association.

The First National Parking Garage is a three-story structure occupying the one-half block to the east of this bank building and is owned by plaintiff which also leases it on a year-to-year basis to H & W Parking Service. The rental payments are based on a percentage of the income from the business. The building is used by H & W as an automobile parking garage and on this operation H & W pays taxes to the commission on the rentals received from parking. Plaintiff exercises no control over the parking service operation.

The building in Flagstaff, designed as a community bank office, consists of 7,605 square feet of floor space of which Arizona Public Service occupies 2,535 square feet, and the remainder is occupied by the Flagstaff branch of the First National Bank of Arizona. Arizona Public Service leases its portion from plaintiff on a ten-year lease, and upon expiration of the lease the bank contemplates occupying the entire building. Utilities, maintenance and janitorial services are paid by the tenants.

The building in Cottonwood is used exclusively as the Verde Valley office of the First National Bank of Arizona. The bank pays all utilities, maintenance and janitorial services with regard to this building.

The Williams building is leased to the bank and consists of 4,750 square feet, of which 240 square feet is subleased on a month-to-month basis to the Grand Canyon Chamber of Commerce. The remainder is occupied by the Williams branch of the bank. The record does not reveal who is landlord to the Chamber of Commerce. The bank pays for all utilities and jani-

torial services and plaintiff furnishes maintenance of the building.

The Prescott property was formerly the Bank of Arizona Building and was acquired by plaintiff in 1957. On the ground floor a beauty shop occupies 1,150 square feet, consisting of two rooms, and a title company occupies 2,550 square feet, consisting of four rooms. The balance of the ground floor is occupied by the Prescott Branch of the First National Bank of Arizona. A mezzanine in the building consists of an area of 1,750 square feet, of which 830 square feet is occupied by an accountant and the remainder is occupied by a lawyer. The second floor, consisting of 5,373 square feet is occupied by several tenants. First National Bank of Arizona furnishes water and janitorial services to itself and all of the rentals. Plaintiff furnishes heat, cooling and maintenance to the entire building. The tenants each furnish their own electricity. All tenants are leasing directly from plaintiff.

The building in Miller Valley has an area of 1,080 square feet, of which 590 square feet is occupied by an interior decorator and the remainder by the Miller Valley branch of the First National Bank of Arizona. The bank furnishes utilities, janitorial services and maintenance for itself and other occupants of the building.

Plaintiff owns several residences throughout the state, acquired solely for the purpose of providing housing for managers of the bank in remote areas.

Plaintiff also owns the building known as The O'Connell Garage located on the northwest corner of Taylor and First Streets, Phoenix. The bank leases from plaintiff and uses this building for parking and storing bank-owned automobiles, as well as automobiles of employees. No part of this building is open to the public for parking. The bank does sublet eight of the forty-eight parking spaces to its own employees at a rental of $12.00 per month.

Also used for automobile parking, plaintiff owns a lot on North Third Street,

Phoenix. The land is fenced and used only by tenants and employees for their cars. Plaintiff is paid for parking spaces on a monthly basis.

The basis for charging rent on the properties of the plaintiff corporation at 411 N. Central Avenue, Phoenix, was arrived at by determining the life of the building for income tax purposes, which is in the neighborhood of fifty years, and then setting the amount of rent at a figure which would return to plaintiff its investment within that period of time plus a return of approximately 4 percent. The rent for the various offices is determined on a factor which combines size and location in the building. The rental for other property is based upon the same theory; i.e., a return to the plaintiff of its investment within the lifetime of the building and a return on the basis of 4 percent. In addition, the rental will vary upon factors such as the size of the space rented, the location of the space rented and the desirability of the accommodations furnished.

We have before us for determination several important questions, the first of which is whether plaintiff is exempt from the payment of transaction privilege taxes and educational excise taxes as a wholly owned subsidiary of the First National Bank of Arizona, a national banking institution.

Plaintiff urges that its ownership of the properties is solely for the benefit and convenience of the First National Bank of Arizona and that each of the properties has a direct relationship to the transacting of business by the bank. It cites O'Neil v. Valley National Bank of Phoenix, 58 Ariz. 539, 121 P.2d 646 (1942) which held that a national bank is exempt from taxation by the commission when it is the lessor of office space in a building, and contends that since plaintiff is a solely owned subsidiary of a national bank the same reasoning should be applied. In support it urges that it carries out vital functions of the bank in acquiring locations for branch offices and making

available parking facilities and residences for its employees. To sustain the contention of this inter-governmental immunity, plaintiff cites the following from First National Bank in St. Louis v. State of Missouri, 263 U.S. 640, 656, 44 S.Ct. 213, 215, 68 L. Ed. 486 (1924):

> " 'National banks are brought into existence under federal legislation, are instrumentalities of the federal government and are necessarily subject to the paramount authority of the United States. Nevertheless, national banks are subject to the laws of the state in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies, or conflict with the paramount law of the United States. * * *' "

On the other hand, the commission urges strongly that the tax does not interfere with the purposes of the bank's creation in that it is not necessary for a bank to be in the office or storage rental business; that although the plaintiff was created by the bank, it is a separate entity engaged in functions apart from the bank, much the same as a city when it engages in proprietary functions apart from governmental functions, and that in such cases the city has been held to be taxable in respect to proprietary functions. City of Phoenix v. Moore, 57 Ariz. 350, 113 P.2d 935 (1941); City of Phoenix v. Bowles, 65 Ariz. 315, 180 P.2d 222 (1947); National Bank v. Commonwealth, 76 U.S. (9 Wall.) 353, 19 L.Ed. 701 (1869).

Bowles holds that presumption is against tax exemptions and states:

> " * * * Where as here, the city enters the field of private competitive business for profit, it divests itself of its sovereignty pro tanto, takes on the character of a private corporation and thereby forfeits its immunity from tax-

ation. * * *" 65 Ariz. 317, 180 P.2d 223.

The case of National Bank v. Commonwealth, supra, deals with taxation of national banks and the Court, speaking of the immunity doctrine, states:

> " * * * That limitation is, that the agencies of the Federal government are only exempted from State legislation, so far as that legislation may interfere with, or impair their efficiency in performing the functions by which they are designed to serve that government. Any other rule would convert a principle founded alone in the necessity of securing to the government of the United States the means of exercising its legitimate powers, into an unauthorized and unjustifiable invasion of the rights of the States. * * *"

■ Although we do not agree with all of the commission's argument, we would hold that plaintiff having been created as a separate entity enjoying the benefits of a corporate existence including, among others, real estate holding and tax advantages, and although performing functions of importance as a subsidiary of a national bank, the taxing by the commission of the business in which it is engaged herein is not such as to impair the operation of said bank as to make it exempt from state taxation within the meaning of the laws giving it the claimed immunity under 12 U.S.C. § 548. Commissioner of Banks v. Chase Securities Corporation, 298 Mass. 285, 10 N.E.2d 472 (1937).

We next consider the question of whether plaintiff engages in business within the meaning of the transaction privilege taxing statutes. This involves the construction of the following pertinent parts of A.R.S. § 42–1314, as amended, and its application to this case:

> "The tax imposed by subsection A of § 42–1309 [1] shall be levied and collected

---

1. A.R.S. § 42–1309, subsec. A in part reads: "There is levied and there shall be collected by the commission * * * annual privilege taxes measured by the amount or volume of business transacted by persons on account of their business activities * * *"

at an amount equal to two percent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within the state in the following businesses:

\* \* \* \* \* \*

"2. Hotels, guest houses, dude ranches and resorts, rooming houses, apartment houses, office buildings, automobile rental services, automobile storage garages, parking lots, tourist camps or any other business or occupation charging storage fees or rents."

■ When words are defined by statute the Court is bound by the legislative definition in all cases where the rights of the parties are based upon the statute. County of Pima v. School District No. One, 78 Ariz. 250, 278 P.2d 430 (1954). "Business" is defined in the following pertinent part of § 42–1301:

"2. 'Business' includes all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage, either directly or indirectly, but not casual activities or sales."

"Engaging" also is defined in the following pertinent part of § 42–1301:

"6. 'Engaging' when used with reference to engaging or continuing in business, includes the exercise of corporate or franchise powers."

■ Plaintiff is organized for the purpose of doing business and actually is engaged in such activities by acquiring property, erecting buildings, executing leases and collecting rents. In doing so, it is exercising corporate powers, taking in substantial gross receipts which benefit the corporation. Certainly these are not casual activities and are done for gain, benefit or advantage. We have already stated that although the corporation is a wholly owned subsidiary of a national bank, this alone does not relieve it from paying transaction privilege taxes.

We next consider separately the properties or businesses involved herein to determine whether the income and receipts therefrom are subject to the tax.

■ The first of these concerns the residences in remote areas. Defendants have conceded that there is no authority, and we find nothing in the act which would require the imposition of the transaction privilege tax in respect to the receipts from the rental of these residences in isolated areas that are occupied by the bank managers and other personnel. We would therefore hold that this income is not taxable.

Next we consider whether plaintiff is engaging in the business of "office buildings" within the meaning of the transaction privilege tax law with respect to the leasing of the First National Bank Building to the bank.

The determination of this issue involves the interpretation of the meaning of "office buildings" as used in A.R.S. § 42–1314. For a better understanding we set forth the statute as it existed when the Arizona Revised Statutes were enacted:

"The tax imposed by subsection A of § 42–1309 shall be levied and collected at an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

"1. Operating or conducting theaters, movies, operas, shows of any type or nature, exhibitions, concerts, carnivals, circuses, amusement parks, menageries, fairs, races, contests, games, billiard and pool parlors and bowling alleys, public dances, dance halls, boxing and wrestling matches and any business charging admission fees for exhibition, amusement or instruction, other than projects of bona fide religious or educational institutions.

"2. Hotels, guest houses, dude ranches and resorts, rooming houses, apartment houses, office buildings, automobile rental services, automobile storage garages, parking lots, tourist camps or any other

business or occupation charging storage fees or rents.

"3. Adjustment and credit bureaus and collection agencies." (This subsection 3 has been repealed)

 In interpreting we are guided by rules of statutory construction. The words used are to be given their ordinary meaning unless it appears from the context or otherwise that a different sense was intended, State v. Curry, 97 Ariz. 191, 398 P.2d 899 (1965), and when the construction of a revenue act is doubtful, a strict construction will be applied with due regard to legislative intent. Alvord v. State Tax Commission, 69 Ariz. 287, 213 P.2d 363 (1950).

Our Supreme Court in Phoenix Title & Trust Company v. Burns, 96 Ariz. 332, 395 P.2d 532 (1964), stated:

"In determining the meaning of a statute, the cardinal rule is of course to ascertain and give effect to the intention of the legislature. Payne v. Knox, 94 Ariz. 380, 385 P.2d 514 (1963). In determining the intent of the legislature the Court will take into consideration the meaning naturally attaching to the words used and will adopt that meaning of words which best harmonizes with the context. Moore v. Arthur Realty Corp., 95 Ariz. 70, 386 P.2d 795 (1963). In addition the Court will apply the rules of statutory construction of *expressio unius est exclusio alterius and ejusdem generis,* where applicable, as approved by this Court in Lewis v. Industrial Commission, 93 Ariz. 324, 380 P.2d 782 (1963) and State Board of Barber Examiners v. Walker, 67 Ariz. 156, 192 P.2d 723 (1948), respectively." (Emphasis theirs.)

 In the statute it is expressly stated that the tax is upon every person engaged in the business of office buildings, automobile storage garages, or parking lots. The parties give different meanings to "engaging in the business of office buildings", but we believe if the words are to have any meaning to the ordinary person when speaking of charging a transaction privilege tax, that meaning would be that the tax is on any person who runs, operates or engages in a business which rents offices, automobile storage space, or parking space in parking lots. Inasmuch as businesses which pay transaction privilege taxes are run and operated on leased premises it is reasonable to assume that the Legislature had in mind that the tax be only on the person operating the business. It is not reasonable, and obviously not the intention of the Legislature, to say that a landlord who rents a piece of realty to a person who thereafter operates a business renting office space or space for storage or parking of cars, is thereby ipso facto in the business himself of running or operating such business to the extent that he must pay a transaction privilege tax on the rental payments he receives for such land, and at the same time require the operator of the business to also pay a tax on the gross proceeds of income derived from the subrental of such offices or space. Had it so intended, the Legislature could have easily spelled it out in the Statute. It is the lessee who is engaging in the business enumerated, and not the landlord. To hold otherwise would be to say that all landlords are engaging in whatever business their tenant happens to operate. The interpretation we give best harmonizes with the context of the entire Statute.

In the instant case the plaintiff has done no more than lease the First National Bank Building to the bank. It does not lease to the individual tenants or occupants, nor does it maintain the building, its elevators, or render any services to the tenants in connection with their occupancy. The bank alone enters into leases with each of the tenants and collects the rent as it becomes due. The bank supervises the services furnished and is available to show prospective tenants available space in the building and act upon complaints from tenants.

 Plaintiff must do more than have the ownership of the property and receive the income derived therefrom in order to be taxable. If it cannot be said with refer-

ence to the building that the landlord is engaged in the operation of the leased premises to the extent that it furnished the offices and services to the individual sub-lessees and customers, with corresponding duties and obligations, then it cannot be said that the landlord is engaged in the business of leasing offices so as to come within § 42–1314. The landlord cannot be considered engaged in any of the businesses enumerated in the Statute when he leases only the building or lot to the tenant who engages in such business.

In Peterson v. Smith, 92 Ariz. 340, 376 P.2d 865 (1962) our Supreme Court cited with approval from White v. Moore, 46 Ariz. 48, 46 P.2d 1077 (1935) the reasoning that a reading of § 42–1314 suggests the Legislature had in mind occupations through which run a common thread of purpose. It said, appearing at 92 Ariz. 341, 376 P.2d 866:

> " '* * * In the first (referring to Subsection 1 of § 42–1314) it meant to include those furnishing chiefly entertainment or amusement for the public, such, for instance, as shows, races, games; and in the second, those supplying accommodations, either wholly or in part, for tourists or transients, such, for instance, as guest houses, dude ranches and resorts, hotels or tourist camps. One reading these two enumerations finds it difficult, if not impossible, to escape the conclusion that only businesses possessing these respective characteristics were intended to be included in these groups.'

\* \* \* \* \* \*

"Subsequent to this decision, the Legislature amended the act to include office buildings. But in so doing, they did not enlarge the scope of the other enumerated businesses. We said in Alvord v. State Tax Commission, 69 Ariz. 287, 291–292, 213 P.2d 363, 366–367:

> " 'When this amendment was adopted the law makers had before them the case of White v. Moore, supra. They knew the problems involved in that case, and the uncertainties presented by

the language of the original act. This decision was in fact a part of the law they were amending. The original enactment, the amendment and the decision must be construed together. The decision told the Legislature it had by the original act imposed no tax on rentals from offices and store rooms for the reason that it had specifically designated certain businesses through which ran a common thread or purpose followed by the expression "any other business or occupation charging \* \* \* rents". The decision told the Legislature that when it used this phrase it used it in a restrictive sense, and that to construe such general language as all inclusive in meaning, so as to apply to every kind or character of business that charge rents, was equivalent to holding that when the Legislature used the word "other", if it meant to use it in a non-restrictive sense, there was no purpose in particularizing the nine businesses preceding. It was told in effect that if it was to use these general terms without restriction there was no object in particular enumeration. With all this before it, the Legislature, in its amendment, proceeded to make the same particular enumerations with one addition and proceeded to use the same general words "any other business or occupation charging storages [sic] fees or rents". As was said in the White case, if the Legislature intended to embrace all businesses charging storage fees and rents, there was no object in particular enumeration unless the Legislature intended the general terms to be restrictive. *In our opinion it is much more reasonable to assume that the Legislature expected to only add one more enumerated business for the purpose of taxation than to speculate that it intended in such an uncertain manner, merely inserting another classification, to reach out and levy a tax on any and all businesses collecting rents.'* (Emphasis supplied.)

"We hold that in the context of this act the term 'automobile rental service' means the business of renting cars on a temporary basis. In most cases, the person who rents the car will be a transient or one who needs the use of a car for a short time. It does not contemplate such a business arrangement as we have here where the leases are for a long term and a permanent business arrangement between the parties is contemplated."

It is to be noted that a distinction is made between the renting of cars on a temporary basis and the rental of commercial vehicles on a long term basis. It seems to us that a distinction is to be made between a landlord who is engaged in the business of renting offices and the casual rental or the rental of realty outright by the landlord without regard to its use for offices.

■ Apropos to the question is the following reasoning in People ex rel. Nauss v. Graves, 283 N.Y. 383, 28 N.E.2d 881 (1940) which dealt with a tax law assessing a tax on the net income of unincorporated businesses:

"* * * When used in tax statutes similar to that involved in the case at bar, 'business' or 'doing business' connote something more than the ownership of property and the receipt of income derived from property. (Citing cases) Although the very nature of the case does not permit an exact formula by which to determine when the activities of a property owner amount to the doing of business, there has been evolved the principle which distinguishes between a passive and an active owner or investor. One who allocates the act of administration of the properties to others and himself performs only such acts as are appropriate to safe-guard his ownership, is to be distinguished from one who himself actively participates in administering the management of the properties. * * * "

We would hold in those instances where plaintiff leases the realty, whether it be to the bank or someone else for offices as such, particularly when it also furnishes services in connection therewith, that it is engaged in the business of "office buildings" within the meaning of the Statute. The same would hold true for "automobile storage garages" and "parking lots". We would also hold that branch banks or branch offices are within the meaning of "office buildings" used in the Statute.

■ Important herein is the meaning to be placed on the words "office buildings" contained in the act. Use of the plural "buildings" also includes the singular "building". A.R.S. § 1–214. Each of these words is of broad significance and has a great variety of meanings. We have consulted Webster's Third New International unabridged dictionary which gives the following definition of the noun, "building":

"1: A thing built. a: A constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structures * * *"

"Office" is defined in Webster's Third New International unabridged dictionary as follows:

"5: A place where a particular kind of business is transacted or a service is supplied: as a: a place in which the functions (as consulting, record-keeping, clerical work) of a public officer are performed b: the directing headquarters of an enterprise or organization c: the place in which a professional man (as a physician or lawyer) conducts his professional business."

We believe the following helpful cases demonstrate the ordinary meaning of these words as contemplated by the Statute: In Jones v. Board of Adjustment, 119 Colo. 420, 204 P.2d 560 (1949), the Court held that the word "office" is synonymous with "place of business". "Office building" was defined by the Court as follows:

"* * * We hold that by the use of the term 'office building' the intent must have

been to identify a type of business enterprise in which the supplying of office space to tenants is the primary business conducted by the owner upon the premises. * * * "

Other cases passing on the meaning of the word "office" are General Reduction Co. v. Tharpe, 11 Ga.App. 334, 75 S.E. 339 (1912); Padrick v. M. C. Kiser Co., 33 Ga.App. 15, 124 S.E. 901 (1924); Bradley v. Certigue Mining and Dredging Co., 93 Misc. 519, 157 N.Y.S. 275 (1916); State v. Parsons, 70 Ariz. 399, 222 P.2d 637 (1950). These lead us to the conclusion that any edifice designed for offices, as distinguished from a shop, store, studio, etc., in which a person carries on his stated occupation or transacts and conducts his business or service, is an office building.

In this action we do not pass upon a holding company which would not have as its purpose the leasing of property for offices, etc. for a benefit. In this connection we also refer to Bodco Building Corporation v. Arizona State Tax Commission, 5 Ariz. App. 589, 429 P.2d 476 (decided this date).

■ We hold the tax is not assessable against plaintiff with respect to the First National Bank Building.

■ We have analyzed the situation with reference to the First National Parking Garage leased to H & W Parking Service and find that the transaction privilege tax is not assessable against plaintiff for the same reasons stated in connection with the First National Bank Building. The garage is operated exclusively by H & W, and the plaintiff exercises no control over the lessee in the operation of the garage. The fact that the lease is on a percentage basis does not affect the situation. The lessee pays tax on the gross income of the rentals.

We next pass upon the Flagstaff property which is a building containing over seven thousand square feet. A third of the space is rented to Arizona Public Service for the conduct of their business. The remainder is leased to the Flagstaff branch of the First National Bank of Arizona in which they conduct a community banking office. Gross receipts from the leases total $98,000 for a four-year, one-month period, with the tenants paying their utilities, maintenance and janitorial services.

■ Considering the definition given to office buildings and the use made of the property by the respective tenants, we hold it is the rental of an office building within the meaning of the act. The plaintiff is renting a building to be used as offices by the tenants for their respective businesses. We see no difference in renting a building to a bank and power company than in renting to an accounting and law firm for offices in which to conduct their respective businesses.

In this instance we cannot see where the bearing of certain maintenance costs by the tenants alters the situation. We make a distinction between this building and the First National Bank Building situation in that the Flagstaff building was first leased in 1956 by plaintiff's predecessor, Bank Properties, Inc., entirely to the bank, but after plaintiff became the owner it chose to execute a ten-year lease to Public Service on part of the property, having the bank remain as the other tenant. It leases the building to two tenants for offices. That the bank intends to some day occupy the entire building does not alter the present arrangement. In the First National Bank Building tenancy the bank leased the entire building, subletting to others. In the latter situation the furnishing of services would become an important factor.

■ We turn now to the Cottonwood property. A reading of the lease leads to the conclusion that this is a landlord-tenant lease akin to the First National Bank Building, Phoenix, situation. We make the same analysis and apply the same reasoning. We hold the tax is not applicable.

■ The next item to be considered is the Prescott property. We find this situation no different from the Flagstaff property. In this instance plaintiff, as lessor, is in the business of renting the major portion of a more than two-story building to a branch bank office, a title company, an accountant, a lawyer and other tenants (unspecified), all of whom use the space as of-

fices for transaction of their business. (Two rooms on ground floor rented to beauty shop) The plaintiff also furnishes heating, cooling and maintenance of the building. In line with the reasoning heretofore expressed, we would hold plaintiff is subject to the tax only on the receipts of those businesses or professions renting office space as we have defined that term.

▇ We next consider the Miller Valley property. It would appear that this is a situation more akin to the Flagstaff property but since we are not furnished with more detail regarding the lease with the interior decorator, of the use made of the premises, we will not labor this opinion with analysis. We can only assume from the statement of facts that the rents are paid to plaintiff for office space, otherwise the property would not be involved, as rents paid to the bank are exempted by the ruling in O'Neil v. Valley National Bank of Phoenix, supra. Since the entire record is before us, we can only rule that the burden was on the plaintiff to show the tax illegal and that there is insufficient evidence to sustain the trial court's ruling. We would hold the tax on this item valid.

▇ In considering the Williams property we are confronted with a situation similar to the Miller Valley property. Plaintiff, however, maintains the building, with utilities being furnished by the bank. We are not given the relationship between plaintiff and the Chamber of Commerce. As we held with reference to Miller Valley, we can only assume that plaintiff is the lessor of all tenants. Since the entire record is before us, we would rule that the burden is on the plaintiff to show the tax illegal and that there is insufficient evidence to sustain the trial court's ruling and would hold the tax valid on this item. We do not, however, close the door to the enlargement of the record and a further consideration of these items by the trial court consistent with this opinion.

▇ Next to be considered is the O'Connell garage in Phoenix. We would hold this property is similar to the H & W Parking Service property. Plaintiff leases the building outright to the bank which maintains it and collects the rent from the employees and tenants who rent spaces for parking. Plaintiff is not subject to the tax.

▇ Lastly, we consider the parking lot in Phoenix. With reference to this property we would hold the plaintiff is engaging in the business of operating a parking lot. Plaintiff maintains the lot, charging a reasonable rent from the bank's tenants and employees. Plaintiff exercises a certain control to limit the spaces to employees and tenants of the bank. We cannot see where the situation would be altered by the fact that the properties are maintained as a convenience to a certain class of occupants. Plaintiff is nevertheless engaged in the business. We would hold the rents collected for parking and storage spaces are subject to the tax.

It is to be noted that we do not hold that a landlord who owns one piece of realty and rents it to a tenant who uses it as an office is taxable. We mean to say he must be engaged in the business of providing office space which presupposes more than one tenant.

Since the parties have agreed that in the event the trial court should rule that a portion of the tax assessed is valid and the remainder is invalid they will attempt to segregate, as to future taxes paid by plaintiff under protest, the valid from the invalid and submit a judgment in conformity with the final determination, we believe it expedient to remand.

Reversed in part, affirmed in part, and remanded to the Superior Court of Maricopa County to enter judgment not inconsistent with this opinion.

CAMERON, C. J., and STEVENS, J., concur.