978 P.2d 650

**CONSTRUCTION DEVELOPERS, INC.,**
an Arkansas corporation, Plaintiff–
Appellee,

v.

**CITY OF PHOENIX, a municipal cor-
poration of the State of Arizona,
Defendant–Appellant.**

**No. 1CA–TX 97–0015.**

Court of Appeals of Arizona,
Division 1, Department T.

Sept. 1, 1998.

Review Denied May 25, 1999.

Snell & Wilmer, L.L.P. by Janet E. Barton, Phoenix, for Plaintiff–Appellee.

Roderick G. McDougall, Phoenix City Attorney by Sandra K. McGee, Assistant City Attorney, Phoenix, for Defendant–Appellant.

GARBARINO, Presiding Judge.

¶1 This appeal presents the question whether a wholly owned subsidiary, existing only to hold title to real property used by its parent company, is subject to City of Phoenix (the City) privilege license (excise) taxes as a business leasing real property for a consideration. Here, the tax court granted summary judgment for the taxpayer, Construction Developers, Inc. (CDI), regarding its claim to set aside the City's excise tax assessment for the audit period of October 1984 through September 1993. The City timely appealed, and we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 In the earlier years of its business, non-party Dillard Department Stores, Inc. (Dillard) acquired stores and store properties with borrowed money. Dillard secured each loan with a mortgage or deed of trust. To further shield its security from Dillard's general creditors, each lender required Dillard to place title to the acquired property in a separate entity.

¶3 Accordingly, in 1967 Dillard incorporated CDI as its wholly owned subsidiary. Dillard used CDI to hold title to properties it had acquired with the help of the lenders. At no time since CDI's creation has it had any full or part-time employees, a business location or office, or any source of revenue. It has never collected rent or other revenue. It has never had a bank account or kept independent books and records.

¶4 As of 1982, Dillard ceased obtaining outside financing for store property acquisitions because it had accumulated enough working capital that it no longer needed to

do so. Although it no longer had a reason to place title to acquired stores or properties in CDI, it continued to do so, apparently out of habit. In 1984 and 1985, Dillard bought three department stores in Phoenix and placed title to these acquisitions in CDI's name.

¶ 5 Between October 1984 and September 1993, Dillard operated retail stores at each of the three Phoenix locations, thus occupying all properties owned by CDI. No oral or written lease agreement ever existed between Dillard and CDI for any of the Phoenix store properties. Dillard paid the occupancy expenses, as well as all real property taxes for each of CDI's store properties.

¶ 6 The City subsequently audited CDI for the time running from October 1984 to September 1993. It estimated that CDI owed $357,888.55 in delinquent excise taxes, penalties, and interest. CDI timely protested the assessment. It lost before the City's hearing officer, except on a portion of the assessed penalties. CDI paid the City's adjusted assessment of $386,797.51 under protest and commenced this refund action in the tax court.

¶ 7 Both parties moved for summary judgment. In support of its motion, the City attached copies of two of its form documents containing CDI's name. The first was a construction permit issued on March 15, 1994, for remodeling at Dillard's Metrocenter store, on which "Construction Developers Inc" was shown as the "contact person" for the owner. This document was entirely type-written and did not identify any individual.

¶ 8 The second document was a handwritten application for a Phoenix building permit dated December 11, 1990, for expanding an office area at "Paradise Valley Mall (DILLARD'S) NOW SEARS." It named "Conts. Developer inc. [sic]" as owner and contact person, and was signed by one Cynthia McAffee as "Job Corrd." No other document submitted in connection with the cross-motions for summary judgment attempted to authenticate or lay foundation for either form.

¶ 9 After considering the cross-motions for summary judgment, the tax court ruled for CDI. The court explained:

Section 14–2(9) of the prior City Code and section 14–445(a)(1) of the new City Code impose a transaction privilege tax on anyone engaged in the business of leasing real property located within the City. Both codes define "business" as "[a]ll activities or acts, personal or corporate, engaged in and caused to be engaged in with the object of gain benefit or advantage either direct or indirect, but not casual activities or sales . . . ."

In concluding that a subsidiary was not engaged in the business of leasing a bank building to its parent corporation, the Court in *Arizona State Tax Commission v. First Bank Building Corp.*, 5 Ariz.App. 594 [429 P.2d 481] (1967), noted that the subsidiary had done no more than lease the building to the parent corporation and that it did not "maintain the building . . . or render any services to the tenants in connection with the occupancy." The *First Bank* court indicated that "[w]hen used in tax statutes similar to that involved in the case at bar, 'business' or 'doing business' connote[s] something more [than] the ownership of property and the receipt of income derived from the property." 5 Ariz. App. at 603 [429 P.2d 481] (citing *People ex rel. Nauss v. Graves*, 283 N.Y. 383 [28 N.E.2d 881] (1940)). In this case, Construction Developers, Inc. (CDI) did not maintain the building or render any services to Dillard's. CDI merely owned the buildings used by Dillard's. Under these circumstances, CDI was not engaged in the business of leasing real property.

[T]here exist no genuine material issues of fact, and . . . during the time period at issue, CDI was not subject to tax under 14–2 or the successor section 14–445 of the Phoenix City Code.

¶ 10 The City appealed from formal judgment refunding CDI's payment with attorneys' fees and interest. We have jurisdiction to review this appeal under Arizona Revised Statutes Annotated (A.R.S.) section 12–2101(B)(1994).

## DISCUSSION

■ ¶ 11 We review the trial court's grant of summary judgment on behalf of CDI in the light most favorable to the City. *See Toy v. Katz*, 192 Ariz. 73, 85, 961 P.2d 1021, 1033 (App.1997). We also determine *de novo* whether any genuine issues of material fact exist and whether the trial court erred in applying the law. *See id.*

¶ 12 Both parties agree that in order to be a taxable entity pursuant to former Phoenix City Code section 14–2(a)(9) and current Phoenix City Code section 14–445, an entity must be engaged in the business of leasing or renting real property located within the City for consideration. From October 1984 through March 1987, former Phoenix City Code section 14–2(a)(9) governed the City's excise tax on the real property leasing business and included the following in its definition of taxable "business activity":

There is hereby levied upon persons on account of their business activities within the City ... privilege taxes to the extent hereinafter provided, to be measured by the gross income of persons, ... and all of said gross income shall be used to measure the tax with exceptions as set forth in Subsections (b) and (a) of this Section, and in Sections 14–40, 14–41, and 14–41.1 of the Phoenix City Code in accordance with the following schedule:

(a) The tax rate for all activities hereunder except activities generating gross income from local advertising under Section 14–2(a)(1), 14–2(a)(5) and 14–2(a)(14) shall be at an amount equal to 1.2 percent of the gross income from the business activity upon every person engaged or continuing in the following business activity:

. . . .

(9) Leasing, renting or licensing for a consideration the use or occupancy of real property located within the City, including any improvements, rights or interest in such property. This tax shall be levied on and collected from the person leasing or renting or licensing to the tenant in actual possession. If the person so leasing or renting or licensing to the tenant in possession is not engaged in the business of leasing or renting real property, or other-

wise is exempt from the tax, the tax is levied on and shall be collected from the lessor nearest such person in any chain of subleases on the property who is engaged in the business of leasing or renting real property.

Phoenix, Ariz., Code § 14–2(a)(9) (1986). Current Phoenix City Code section 14–445(a)(1) imposes a tax on the same activity, adding that "[p]ayments made by the lessee to, or on behalf of, the lessor for property taxes, repairs, or improvements are considered to be part of the taxable gross income." Phoenix, Ariz., Code § 14–445(a)(1) (1996).

■ ¶ 13 In its appeal, the City disputes the tax court's finding that CDI was entitled to summary judgment because no question of fact existed regarding the taxability of its lease. First, the City argues that CDI was conducting "business" within the meaning of the City code because it was engaged in an activity (leasing real property to Dillard), the objective of which was benefit or advantage. According to the City, CDI "held title to property, paid insurance, paid real estate taxes, and maintained property (albeit through an agent). These activities are clearly business activities as defined in the Phoenix City Tax Code." We disagree.

¶ 14 Former Phoenix City Code section 14–1 defined "business" as "[a]ll activities or acts, personal, or corporate, engaged in and caused to be engaged in with the object of gain benefit or advantage either direct or indirect, but not casual activities or sales as herein defined." Phoenix, Ariz., Code § 14–1 (1985). Current Phoenix City Code section 14–100 defines business as "all activities or acts, personal or corporate, engaged in and caused to be engaged in with the object of gain, benefit, or advantage, either direct or indirect, but not casual activities or sales." Phoenix, Ariz., Code § 14–100 (1997).

¶ 15 Both former code section 14–1 and current code section 14–100 define "business" to include "activities or acts" that an individual or corporate taxpayer personally engages in or causes another to engage in for some direct or indirect advantage. It is clear from the record that the City never brought forward any admissible evidence tending to es-

tablish that CDI engaged in conduct for some direct or indirect benefit.

¶ 16 In fact, the City produced only two of its construction-related forms on which CDI's name appeared. One of these was dated after the close of the audit period and for that reason was entirely inapposite. Additionally, and more importantly, the City offered no affidavit or other avowal of admissible evidence contemplated by Rule 56(c), Arizona Rules of Civil Procedure, to authenticate or establish the significance of either form.

¶ 17 The only evidence in the record establishes, without contradiction, that during the audit period, CDI had no full or part-time employees, no business location or offices, no source of revenue, no bank account, and no independent books and records. Nothing in the record before the tax court demonstrated, much less suggested, that the taxpayer performed a single corporate act aside from challenging the City's excise tax assessment.

¶ 18 Instead, the evidence established that CDI had once functioned strictly as a business tool of its parent corporation, non-party Dillard. *See Arizona State Tax Comm'n v. First Bank Bldg. Corp.*, 5 Ariz. App. 594, 602, 429 P.2d 481, 489 (1967) (finding subsidiary that merely held title to real property and received income from it was not engaged in "business"). A corporate taxpayer like CDI cannot be said to have engaged in "business" of any kind based on the record before us because neither CDI nor anyone at CDI's behest engaged in any "activity" or "act" aimed at direct or indirect gain, benefit, or advantage, as required by law.

¶ 19 In further support of its argument that CDI was engaged in "business activity," the City cites case law for the proposition that "business" includes "any activity carried on by the corporation which benefits its organizers or members." *O'Neil v. United Producers & Consumers Coop.*, 57 Ariz. 295, 304, 113 P.2d 645, 648 (1941); *see also Tempe Life Care Village, Inc. v. City of Tempe*, 148 Ariz. 264, 268, 714 P.2d 434, 438 (App.1985). We are unable to find the benefit that the City implies was bestowed on Dillard. No evidence suggests that Dillard is currently re-

ceiving any gain, benefit, or advantage from CDI's existence.

¶ 20 Finally, the other decisions on which the City relies are distinguishable in that none of them involves a dormant shell subsidiary like CDI. *See, e.g., Higgins v. Smith*, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406 (1940) (involving subsidiary traded in securities); *Bodco Bldg. Corp. v. Arizona State Tax Comm'n*, 5 Ariz.App. 589, 429 P.2d 476 (1967) (concerning subsidiary that leased real property to parent and to unrelated third parties based on improvement costs plus 5%); *Bonnar–Vawter, Inc. v. Johnson*, 157 Me. 380, 173 A.2d 141 (1961) (involving subsidiary that manufactured goods and sold to parent, employed persons, and bought its own raw materials and supplies); *Commissioner of Revenue v. Globe Automatic Vending Co., Inc.*, 383 Mass. 886, 421 N.E.2d 1213 (1981) (concerning subsidiary that leased vending machines to third parties); *Phelps v. Missouri–Kansas–Texas R.R., Co.*, 438 S.W.2d 181 (Mo.1968) (involving subsidiary that provided highway transportation services); *Cook Export Corp. v. King*, 617 S.W.2d 879 (Tenn.1981) (concerning subsidiary that entered into written contracts, acted as commissioned foreign sales agent, bought receivables from parent corporation, and paid dividends); *Rena–Ware Distrib.'s, Inc. v. Washington*, 77 Wash.2d 514, 463 P.2d 622 (1970) (involving subsidiary that engaged in door-to-door sales and provided management services to related companies).

## CONCLUSION

¶ 21 The tax court did not err in holding the City's excise tax inapplicable to CDI at any time during the audit period. Having found that CDI did not engage in the requisite "business" activity, we need not address the fact that a finding of business activity would not be sufficient in and of itself to subject CDI to excise tax liability. We could not sustain the City's assessment unless we also were to determine that CDI leased to Dillard for a consideration. *See* Phoenix, Ariz., Code § 14–2(a)(9) (1986). Neither do we have to consider whether the City's assessment appropriately included penalties for

late filing, failure to file returns, and negligence.

¶ 22  CDI requests an award of attorneys' fees on appeal under A.R.S. section 12–348 (Supp.1997).  We grant the request and note that CDI may establish the amount of its award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

GERBER, and RYAN, JJ., concur.