25 P.3d 1158

**CITADEL CARE CENTER, a limited partnership; Glendale Care Center, a limited partnership; Las Fuentes Associates, a limited partnership; La Canada Associates, a general partnership; Scottsdale Care Center, a limited partnership; Astor Stave dba Sun Grove Village Care Center, Plaintiffs–Appellants,**

v.

**ARIZONA DEPARTMENT OF REV-ENUE, an agency of the State of Arizona, Defendant–Appellee.**

No. 1 AC–TX 00–0006.

Court of Appeals of Arizona, Division 1, Department T.

May 29, 2001.

Robbins & Green, P.A. by James O. Ehinger, Wayne A. Smith, Phoenix, Attorneys for Plaintiffs–Appellants.

Janet Napolitano, Attorney General by Michael P. Worley, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

TIMMER, Judge.

¶ 1 Appellants ("taxpayers") lease real property to entities that operate licensed nursing care facilities on the premises. Taxpayers contend the tax court erred by entering summary judgment in favor of the Arizona Department of Revenue ("ADOR") on their claims for refunds of state transaction privilege taxes paid between 1989 and 1993 under the commercial lease classification, Ariz.Rev.Stat. Ann. ("A.R.S.") section 42–5069 (1999) (formerly A.R.S. section 42–1310.09). The parties agree that taxpayers are entitled to refunds under a nursing care institution exemption that requires them to distribute refunded moneys to persons who resided in the institutions during the pertinent tax years. A.R.S. § 42–5069(C)(15). Taxpayers argue, however, that they are entitled to unrestricted refunds because their rental income was excluded from taxation under other provisions of the commercial lease classification that do not require a return of moneys to nursing care residents.

¶ 2 To resolve this appeal, we must decide these issues:

1. Whether leasing real property for use as a licensed nursing care facility at which nursing care patients indefinitely reside constitutes business activity within the commercial lease classification defined by A.R.S. section 42–5069, and

2. If so, whether the taxpayers' leasing activities were nevertheless excluded from the commercial lease classification by A.R.S. section 42–5069(C)(10)

because the taxpayers "leas[ed] ... dwelling units ... intended to serve as the principal or permanent place of residence for the lessee...."

We hold that the taxpayers' leasing activities during the relevant period fell within the commercial lease classification and were not subject to any exclusion until enactment of the nursing care institution exemption. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 The taxpayers are one individual and five partnerships that acquired land, constructed nursing homes, and leased the improved properties to corporations, which then operated each property as a licensed nursing care institution. Patients at each institution typically lived there for periods exceeding six months. Many such patients moved personal possessions into the nursing homes, changed their voter registrations to the precinct where the nursing homes were located, received mail at the nursing homes, and maintained no other places of residence. Each taxpayer filed Arizona transaction privilege tax returns between 1989 and 1993 to report and pay commercial leasing taxes on the nursing home operators' lease payments.

¶ 4 In 1993, the legislature amended the commercial lease classification by adding subsection (C)(15) to the predecessor to A.R.S. section 42–5069. 1993 Ariz. Sess. Laws, ch. 212, § 1. The amendment exempted from privilege tax "[l]easing or subleasing real property used by a licensed nursing care institution." *Id.* This exemption was applied retroactively to 1982, and tax refunds were therefore available. 1994 Ariz. Sess. Laws, ch. 312, §§ 3, 4. But refunds were procurable only if "the taxpayer requesting the refund provide[d] proof satisfactory to the department of revenue that the monies paid as taxes [would] be returned to the persons who were residents of the licensed nursing care institution during the period for which the tax was paid." 1993 Ariz. Sess. Laws, ch. 212, § 3.

¶ 5 In late October 1993, the taxpayers filed refund claims for the relevant period totaling $284,538.73. In compliance with the new exemption, ADOR requested proof that the taxpayers would return refunded monies to the persons who resided in the nursing care institutions during the period for which the taxes were paid. 1993 Ariz. Sess. Laws Ch. 212, § 3. Because the taxpayers declined to provide such proof, ADOR refused their claims.

¶ 6 After exhausting their administrative remedies before the Arizona Board of Tax Appeals, the taxpayers brought this action in the tax court. On cross-motions for summary judgment, the tax court ruled for ADOR. The taxpayers timely appealed, and we have jurisdiction. A.R.S. § 12–2101(B) (1994).

## STANDARD OF REVIEW

¶ 7 We review *de novo* the tax court's grant of summary judgment, viewing the evidence in the light most favorable to the taxpayers as the non-prevailing parties. *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 180, 939 P.2d 811, 813 (App.1997). Likewise, we are not bound by that court's interpretation of A.R.S. section 42–5069. *Blum v. State*, 171 Ariz. 201, 204, 829 P.2d 1247, 1250 (App.1992).

## DISCUSSION

I. **Did the taxpayers' leasing activities fit within the commercial lease classification?**

A. **The "business of leasing"**

¶ 8 The taxpayers were obligated to pay taxes on their rental income if they engaged in the "business of leasing" real property. A.R.S. § 42–5069(A). The taxpayers argue that they did not engage in the "business of leasing" because leasing was incidental to their central purpose of acquiring land and developing, constructing, and owning nursing home facilities. In support of their contention, the taxpayers rely solely on *State v. Selby*, 25 Ariz.App. 500, 544 P.2d 717 (1976), in which we held that a couple's single act of leasing property to a company owned by them for use as an automobile dealership did not constitute the business of leasing property. 25 Ariz.App. at 501, 544 P.2d at 718. We

first noted that "business" is defined in our tax code, unless the context otherwise requires, as activities undertaken with the object of gain, benefit or advantage, excluding "casual activities or sales." *Id.* (citing A.R.S. § 42–1301(1) (now A.R.S. § 42–5001(1) (Supp.2000))). We then concluded that the couple's isolated act of leasing constituted a "casual activity" and was therefore excluded from taxation. *Id.*

¶ 9 But as argued by ADOR, *Selby* and the "casual activities" exclusion is inapplicable to this case in light of the legislature's 1988 amendment to A.R.S. section 42–5069, which specified who is engaged in the "business of leasing." Section 42–5069(B) now provides:

A person who, as a lessor, leases or rents for a consideration under **one or more leases or rental agreements** the use or occupancy of real property that is used by the lessee for commercial purposes is deemed to be engaged in business and subject to the tax imposed by article 1 of this chapter [A.R.S. sections 42–5001 through 42–5039], but this subsection does not include leases or rentals of real property used for residential or agricultural purposes.

(Emphasis added.) Under this provision, therefore, even a single lease of real property used for commercial purposes generates "business" activity subject to taxation. In light of this specific definition, we·hold that the general definition of "business" set forth in A.R.S. section 42–5001(1), including the "casual activities" exclusion, does not apply to determine whether a taxpayer is engaged in the "business of leasing." Because the taxpayers leased multiple properties to nursing home operators, they engaged in the "business of leasing" under A.R.S. section 42–5069(A). In light of our conclusion, we do not address the taxpayers' argument that their leasing activities were "casual" under A.R.S. section 42–5001(1).

**B. The residential exclusion**

¶ 10 The taxpayers next argue that because the rented premises were "used for residential purposes" by nursing home patients, the taxpayers' leases to the nursing home operators were excluded from the commercial lease classification by A.R.S. section 42–5069(B). ADOR counters that this exclusion applies only to rentals of property used by the immediate lessee for residential purposes. Because the taxpayers' lessees—nursing home operators—did not "reside" on the property, ADOR contends, the residential exclusion is inapplicable. We rely on principles of statutory interpretation to ascertain the legislature's intent in enacting A.R.S. section 42–5069(B).

¶ 11 We first examine a statute's language and will give words their ordinary meaning unless the context of the provision suggests otherwise. *See Calmat of Arizona v. State ex rel. Miller,* 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993); A.R.S. § 1–213 (1995). If the words do not disclose the legislative intent, we scrutinize the statute as a whole and give it a fair and sensible meaning. *Luchanski v. Congrove,* 193 Ariz. 176, 178, ¶ 9, 971 P.2d 636, 638 (App.1998). Finally, although we interpret tax statutes liberally in favor of taxpayers, we strictly construe any exemptions from taxation. *Brink Elec. Constr. Co. v. Arizona Dep't of Revenue,* 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995).

¶ 12 After defining the "business of leasing," the legislature excluded from that classification "leases or rentals of real property used for residential or agricultural purposes." A.R.S. § 42–5069(B). Although the provision fails to specify whether it refers to property used by the immediate lessee or an ultimate occupant, we conclude that the legislature intended to describe the former. The legislature excluded leases of property used for residential and agricultural purposes from a discrete category of rental agreements: those for real property "used by the lessee for commercial purposes." A.R.S. § 42–5069(B). Because the legislature had defined the "user" in the general classification, it did not need to repeat this description in the exclusion. *See Herman v. City of Tucson,* 197 Ariz. 430, 434, ¶ 14, 4 P.3d 973, 977 (App.1999) (We interpret statutory language to avoid redundancy.). Strictly construing this exemption as we must, *Brink Elec. Constr. Co.,* 184 Ariz. at 358, 909 P.2d at 425, we decide that the "use" described in

the exclusion clause of A.R.S. section 42–5069(B) refers to the use "by the lessee" as set forth in the preceding phrase.

¶ 13 Our interpretation is further bolstered by reference to exclusions from the commercial lease classification enumerated in A.R.S. section 42–5069(C) that explicitly address circumstances in which leased property is not used by the immediate lessee. *See Goulder v. Arizona Dep't of Transp., Motor Vehicle Div.*, 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993) (explaining that statutory language should be interpreted in conjunction with other provisions of statute). Subsections (C)(3), (C)(6), and (C)(15) exclude leases from the commercial classification if the leased premises are sublet under described circumstances.[1] The legislature's explicit treatment of sublease situations under these provisions and failure to similarly delineate such circumstances in subsection (B) further evidences its intent under that provision to hinge the residential and agricultural exclusions on an immediate lessee's use of the property. *See Board of Regents v. Pub. Safety Ret. Fund Manager*, 160 Ariz. 150, 157, 771 P.2d 880, 887 (App.1989) ("Where the legislature has specifically used a term in certain places within a statute and excluded it in another place, courts will not read that term into the section from which it was excluded.").

¶ 14 Finally, if we adopt the taxpayers' expansive interpretation of A.R.S. section 42–5069(B), the legislature's adoption of subsection (C)(15) would have been largely superfluous. *Herman*, 197 Ariz. at 434, ¶ 14, 4 P.3d at 977 (We avoid interpreting a statute "so as to render any of its language mere 'surplusage,' [and instead] give meaning to 'each word, phrase, clause, and sentence . . . so that no part of the statute will be void, inert, redundant, or trivial.'") (quoting *Walker v. City of Scottsdale*, 163 Ariz. 206, 210, 786 P.2d 1057, 1061 (App.1989)). Indisput-

ably, people reside in nursing homes. Thus, if leases for real property used by *anyone* for residential purposes are excluded from the commercial lease classification, as the taxpayers argue, leases to nursing home operators would be excluded from the commercial lease classification under A.R.S. section 42–5069(B). Accordingly, the legislature would have had no need to enact subsection (C)(15) to ensure that such leases escape this classification. To avoid rendering this subsection superfluous, we reject the taxpayers' proposed construction for this additional reason.

¶ 15 Our interpretation of A.R.S. section 42–5069(B) is not inconsistent with this court's prior decision in *Bodco Bldg. Corp. v. Arizona State Tax Comm'n*, 5 Ariz.App. 589, 429 P.2d 476 (1967), as the taxpayers contend. In *Bodco Bldg. Corp.*, we determined that a bank's wholly-owned subsidiary engaged in the "business of office buildings," as defined by A.R.S. section 42–1314(A)(2) (repealed), by leasing buildings to the bank to use as banking facilities and was therefore obligated to pay transaction privilege taxes on its rental income. 5 Ariz.App. at 590, 592, 429 P.2d at 477, 479. In its discussion, the court rejected the subsidiary's contention that the legislature only intended to tax rental income from buildings that contain multiple offices for rent to several tenants. *Id.* at 593, 429 P.2d at 480. Rather, the court focused on how the property was used and concluded that lessors of buildings used by a single tenant for offices could be taxed pursuant to former A.R.S. section 42–1314(A)(2). *Id.*

¶ 16 The taxpayers argue that *Bodco Bldg. Co.* supports a conclusion that whether rental income is taxed under A.R.S. section 42–5069(B) depends on how the property is ultimately used by an occupant. But the taxpayers misconstrue *Bodco Bldg. Co.* The holding in that case turned on the meaning of the phrase "office building" as used in former section 42–1314(A)(2) and the lessor's intent

---

1. Section 42–5069(C) provides, in pertinent part, that the commercial leasing classification does not include:

    3. Leasing real property to a lessee who subleases the property if the lessee is engaged in business classified under the commercial lease classification or the transient lodging classification.

    . . .

    6. Leasing real property for sublease if the tenant in possession of the property is subject to the rental occupancy tax pursuant to article 9 of this chapter.

    . . .

    15. Leasing or subleasing real property used by a nursing care institution as defined in § 36–401 that is licensed pursuant to title 36, chapter 4.

in leasing the premises. *Id.* at 592–93, 429 P.2d at 479–80. Significantly, the court noted that a lessor would not be taxed under section 42–1314(A)(2) "if he is the owner of a building containing many individual office spaces and rents it outright to a tenant who then operates the building and subleases to individual tenants." *Id.* at .592, 429 P.2d at 479. Thus, the taxation of rental income under section 42–1314(A)(2) did not depend on the ultimate use of the property, and *Bodco Bldg. Co.* does not support the taxpayers' interpretation of A.R.S. section 42–5069(B).

¶ 17 The taxpayers also argue that a narrow construction of A.R.S. section 42–5069(B) would lead to an "obviously absurd" result because fictitious business entities cannot "reside" on property, and leases to such entities would therefore always fall within the commercial lease classification. *See State v. Medrano–Barraza,* 190 Ariz. 472, 474, 949 P.2d 561, 563 (App.1997) ("We presume the framers of the statute did not intend an absurd result and our construction must avoid such a consequence."). We fail to discern why it would be absurd to omit non-persons from the residential exclusion, and the taxpayers offer no explanation. We note, however, that because the legislature excluded seventeen categories of leases from the commercial lease classification, A.R.S. § 42–5069(C), not all leases to fictitious entities are included within the commercial lease classification, as the taxpayers contend.

¶ 18 For these reasons, we hold that the taxpayers' leases did not fall within the residential exclusion set forth under A.R.S. section 42–5069(B).

## II. Are the taxpayers' leasing activities excluded from the commercial lease classification by A.R.S. section 42–5069(C)(10)?

¶ 19 Taxpayers next argue that, even assuming their leasing activities were encompassed within the commercial lease classification under A.R.S. sections 42–5069(A) and (B), they were insulated from taxation under A.R.S. section 42–5069(C)(10). That subsection provides:

   C. The commercial lease classification does not include:

      . . .

   10. Leasing or renting dwelling units, lodging facilities or trailer or mobile home spaces if the units, facilities or spaces are intended to serve as the principal or permanent place of residence for the lessee or renter or if the unit, facility or space is leased or rented to a single tenant thirty or more consecutive days.

Because the nursing-care patients used the facilities as their principal or permanent place of residence or resided there for thirty or more consecutive days, the taxpayers maintain that this provision immunized them from taxation. ADOR argues that this exclusion applies only when an immediate lessee uses the described premises as a principal or permanent place of residence or occupies it as a residence for thirty or more consecutive days. We agree with ADOR.

¶ 20 The crux of the presented issue is whether the "lessee," "renter," and "tenant" described in A.R.S. section 42–5069(C)(10) refer to the immediate lessee or an ultimate occupant. The language of the provision identifies a particular lessee by referring to "*the* lessee or renter" rather than "a" or "any" lessee or renter. A.R.S. § 42–5069(C)(10) (emphasis added). As set forth in ¶¶ 12–14, *supra,* the only lessee described in the commercial lease classification is a taxpayer's immediate lessee. Thus, we understand the legislature's reference to a particular lessee or renter in A.R.S. section 42–5069(C)(10) to mean the immediate lessee described in A.R.S. section 42–5069(B).

¶ 21 Similarly, although A.R.S. section 42–5069(C)(10) excludes from the commercial lease classification leases to "a single [residential] tenant" for thirty or more consecutive days, we do not discern any indication that "tenant" means an ultimate occupant of the premises rather than the immediate lessee. As previously explained, when the legislature intended to exclude leases from the commercial lease classification based on the occupancy of a tenant-in-possession, it did so explicitly. *See* ¶ 13, *supra.* As it failed to do so in subsection (C)(10), and because we must strictly construe this exclusion from taxation, *Brink Elec. Constr. Co.,* 184 Ariz. at 358, 909 P.2d at 425, we decide that "tenant" refers to a taxpayer's immediate lessee.

¶ 22 The taxpayers argue that if we conclude that A.R.S. section 42–5069(B) and

(C)(10) both refer to premises occupancy by immediate lessees, we would render subsection (C)(10) superfluous. Specifically, they contend that if an immediate lessee's residential use of property already removes the lease from the commercial lease classification under A.R.S. section 42–5069(B), the lease would not need to be again excluded under subsection (C)(10).

¶ 23 We acknowledge that the interplay between A.R.S. section 42–5069(B) and (C)(10) is not readily apparent. However, a review of the legislative history of the provision demonstrates that our construction of subsection (C)(10) does not render it superfluous. *See Carrow Co. v. Lusby*, 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990) ("Legislative intent often can be discovered by examining the development of a particular statute.").

¶ 24 In 1988, as part of wide-scale revisions to the transaction privilege taxation scheme, the legislature enacted A.R.S. section 42–1310.10 (renumbered as A.R.S. section 42–5069), which defined the commercial lease classification as the "business of leasing" real property and then excluded six categories of leases from the classification. The next year, the legislature added a subsection to the provision, which is identical to current section 42–5069(B), and, for the first time, excluded from the classification leases of property used for residential or agricultural purposes. In 1990, after the statute had been renumbered, the legislature added the subsection currently enacted as A.R.S. section 42–5069(C)(10).

¶ 25 In light of the order in which subsections (B) and (C)(10) were enacted, we conclude that the legislature intended the latter provision to define the types of "residential" leases described in subsection (B) that are excluded from the commercial lease classification.[2] Read in that manner, our interpretation of A.R.S. section 42–5069(B) and (C)(10) do not render the latter provision surplusage.

¶ 26 Because the nursing home operators did not themselves reside in the leased premises, we hold that the taxpayers were not insulated from taxation by A.R.S. section 42–5069(C)(10).[3]

## CONCLUSION

¶ 27 The taxpayers' gross income from leasing properties to nursing home operators was within the tax base of the commercial lease classification of A.R.S. section 42–5069, and was not excluded from taxation under A.R.S. section 42–5069(B) or (C)(10). We therefore affirm. Because the taxpayers are not the prevailing parties, we deny their requests for attorney's fees under A.R.S. section 12–348(B) (Supp.2000).

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge and SUSAN A. EHRLICH, Judge.

---

**2.** Similarly, in 1993, the legislature added subsection (C)(12) to A.R.S. section 42–5069, which lists the circumstances under which leasing property for agricultural purposes will be excluded from the commercial lease classification.

**3.** In light of our decision that the taxpayers' rental income was not excluded from taxation under A.R.S. section 42–5069(B) or (C)(10), we do not address the taxpayers' argument that A.R.S. section 42–5069(C)(15) could not retroactively deprive them of a vested right to a refund of mistakenly paid taxes.