60 P.3d 231

Scott CANADY, an unmarried individual, Ralph and Margaret Canady, husband and wife, and Pamela Garapich, an unmarried individual, Intervening Plaintiffs–Appellants,

v.

PRESCOTT CANYON ESTATES HOMEOWNERS ASSOCIATION, Prescott Canyon Estates Homeowners Association Board of Directors, and Don Larson, President, Defendants–Appellees.

No. 1 CA–CV 02–0138.

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 26, 2002.

As Amended and Redesignated as
Opinion Dec. 20, 2002.

Arizona Center for Disability Law, By Julianne H. Carter, Phoenix, Attorneys for Appellants.

James A. Simmons, Prescott, Attorney for Appellees.

OPINION

EHRLICH, Judge.

¶ 1 Prescott Canyon Estates Homeowners Association, its board of directors and its president (collectively "Association") refused to waive their community's minimum-age requirement so that a disabled person of less than that minimum age of 35 years, could reside with his parents. The trial court granted summary judgment in favor of the Association, ruling that the age restriction was lawful and did not discriminate based on

disability. For the reasons discussed below, we disagree, and accordingly reverse and remand for entry of judgment in favor of Ralph, Margaret and Scott Canady, and Pamela Garapich, and for such further proceedings as are necessary.

## BACKGROUND

¶2 Prescott Canyon Estates ("Estates") is a residential community that requires at least one person fifty-five years of age or older to reside in each unit. In September 1999, Ralph and Margaret Canady, who met this age restriction, entered an agreement to buy an Estates home owned by Pamela Garapich. The Canadys' twenty-six-year-old son, Scott, who is severely developmentally disabled, lived with them because of his disability.

¶3 The Estates's covenants, conditions and restrictions ("CC & Rs") provide that no person less than the age of thirty-five years may reside in the community. Accordingly, when the president of the Association learned of the purchase agreement between the Canadys and Garapich, he informed Garapich that a person younger than thirty-five years could not live in the subdivision and that the restriction could not be amended or waived by the Association.

¶4 The Canadys and Garapich cancelled the sale, but they filed housing discrimination complaints against the Estates with the Arizona Attorney General's Office. An Assistant Attorney General concluded that there was reasonable cause to believe that the Association had unlawfully discriminated against the Canadys when it denied them the opportunity to purchase an Estates home due to their son's condition. ARIZ.REV.STAT. ("A.R.S.") § 41–1491.19 (1999). The State then brought this action against the Association, alleging that it had engaged in unlawful housing discrimination against a disabled person by failing to make a reasonable accommodation to allow Scott to live in an Estates home with his parents. The trial

court allowed the Canadys and Garapich to intervene as plaintiffs.

¶5 The parties filed cross-motions for summary judgment based on a joint statement of stipulated facts. The trial court granted judgment in favor of the Association, finding the Estates's age restrictions to be a sanctioned form of discrimination. Although it acknowledged that the state and federal fair housing acts "require providers of housing to reasonably accommodate those with disabilities to allow them to enjoy housing on an equal basis with others," the court concluded that the Association's actions did not constitute a failure to reasonably accommodate Scott's needs because the purpose of the Estates's age restriction was lawful and did not discriminate based on disability. It further concluded that there was no disparate impact on persons with disabilities and that granting the relief requested would impede the Association's ability to protect the rights of the Estates's older residents.

¶6 The Canadys and Garapich appealed. In reviewing a summary judgment in a case such as this one in which there are no disputed material facts, we independently review the trial court's application of the law. *Sherman v. First Am. Title Ins. Co.*, 201 Ariz. 564, 566 ¶2, 38 P.3d 1229, 1231 (App. 2002).

## ANALYSIS

¶7 Pursuant to the federal Fair Housing Act of 1988, 42 U.S.C. § 3604(f)(1) (2000), it is unlawful

[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) that buyer or renter;

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that buyer or renter.

Discrimination includes "a refusal to make reasonable accommodations [1] in rules, poli-

---

**1.** The concept of reasonable accommodation was borrowed from section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794. *City of*

*Edmonds v. Washington State Bldg.Code Council*, 18 F.3d 802, 806 (9th Cir.1994) (citing 1988 U.S.C.C.A.N. 2186), *aff'd*, 514 U.S. 725, 115 S.Ct.

cies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Similar provisions appear in Arizona's Fair Housing Act. A.R.S. § 41–1491.19(A), (D)(2) (1992). In addition, the Arizona Developmental Disabilities Act prohibits discrimination in housing based on developmental disability. A.R.S. § 36–551.01 (Supp.2001). *See Westwood Homeowners Ass'n v. Tenhoff,* 155 Ariz. 229, 236–37, 745 P.2d 976, 983–84 (App.1987)(restrictive covenant prohibiting residential facility for disabled individuals contrary to public policy established by Arizona Developmental Disabilities Act).

¶ 8 "Housing for older persons" is exempt from the familial status [2] anti-discrimination provisions in both the federal and state Fair Housing Acts. 42 U.S.C. § 3607(b) (2000); A.R.S. § 41–1491.04 (1999). Housing qualifies as "housing for older persons" if it is

intended and operated for occupancy by persons 55 years of age or older, and

(i) at least 80 percent of the occupied units are occupied by at least one person who is 55 years of age or older;

(ii) the housing facility or community publishes and adheres to policies and procedures that demonstrate the [requisite] intent . . .; and

(iii) the housing facility or community complies with rules issued . . . for verification of occupancy.

42 U.S.C. § 3607(b)(2)(C); *see* 24 C.F.R. § 100.305. There are similar provisions in the Arizona statute. A.R.S. § 41–1491.04(B). Neither the federal nor the state Act exempts housing for· older persons from the provisions prohibiting discrimination against disabled persons.

¶ 9 The federal Fair Housing Act is "a broad mandate to eliminate discrimination against and equalize housing opportunities for disabled individuals." *Bronk v. Ineichen,* 54 F.3d 425, 428 (7th Cir.1995).[3] Because it is "a broad remedial statute," its provisions are to be generously construed and "its exemptions must be read narrowly." *City of Edmonds,* 18 F.3d at 804. *See Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc.,* 3 F.3d 1472, 1475 (11th Cir.1993), *cert. denied,* 513 U.S. 808, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994)("Exemptions from the Fair Housing Act are to be construed narrowly, in recognition of the important goal of preventing housing discrimination."). We thus consider whether the Association failed to make a reasonable accommodation for Scott "in rules, policies, practices or services if the accommodations may be necessary to afford the person equal opportunity to use and enjoy a dwelling." A.R.S. § 41–1491.19(D)(2). *See* 42 U.S.C. § 3604(f)(3)(B).[4]

¶ 10 The federal Fair Housing Act imposes an affirmative duty to reasonably accommodate disabled persons. *City of Edmonds,* 18 F.3d at 806. To reasonably accommodate a disabled person, an individual or group may

1776, 131 L.Ed.2d 801 (1995); *Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328, 334 (2d Cir. 1995).

**2.** Both Acts prohibit housing discrimination on the basis of familial status, defined in part as one or more individuals younger than the age of eighteen years domiciled with a parent or another person having legal custody of the minor or minors. 42 U.S.C. §§ 3602(k)(2000)(definition), 3604(a)-(e)(prohibition against discrimination based on familial status); A.R.S. §§ 41–1491.01(definition), 41–1491.14 (1999)(discrimination prohibition).

**3.** Because the provisions of Arizona's Fair Housing Act involved in this appeal are virtually identical to those provisions of the federal Act, federal case authority is persuasive in interpreting Arizona's statute. *Cf. Div. of Occupational Safety & Health of Indus. Comm'n of Arizona v. Chuck*

*Westenburg Concrete Contractors, Inc.,* 193 Ariz. 260, 267 ¶ 28, 972 P.2d 244, 251 (App.1998) (recognizing that federal case law is persuasive in interpreting Arizona's occupational safety and health statutes); *Francini v. Phoenix Newspapers, Inc.,* 188 Ariz. 576, 582, 937 P.2d 1382, 1388 (App.1996)(stating that, because Arizona's civil rights laws are modeled after federal laws, federal case law is persuasive in applying the Arizona statutes).

**4.** An aggrieved party alleging violations of 42 U.S.C. § 3604(f) may proceed under any or all of three theories: disparate treatment, disparate impact and failure to make reasonable accommodation. *Smith & Lee Assoc., Inc. v. City of Taylor,* 102 F.3d 781, 790 (6th Cir.1996). Because we decide this case based on the Association's failure to reasonably accommodate Scott, we decline to reach the disparate impact issue otherwise raised.

have to make an affirmative change in an otherwise valid policy, and so a reasonable accommodation may involve "changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual." *Bangerter v. Orem City Corp.,* 46 F.3d 1491, 1501–02 (10th Cir.1995)(quoting *Oxford House, Inc. v. Township of Cherry Hill,* 799 F.Supp. 450, 462 n. 25 (D.N.J.1992)). A facially neutral requirement that affects disabled and non-disabled individuals alike implicates the reasonable accommodation section of the Act when it prevents a disabled individual from gaining access to proposed housing. *Hill v. Cmty. of Damien of Molokai,* 121 N.M. 353, 911 P.2d 861, 875–76 ¶¶ 45–46 (1996). The legislative history of 42 U.S.C. § 3604(f)(3)(B) suggests that

> [t]he concept of "reasonable accommodation" has a long history in regulations and case law dealing with discrimination on the basis of handicap. A discriminatory rule, policy, practice or service is not defensible simply because that is the manner in which such rule or practice has traditionally been constituted. This section would require that changes be made to such traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling.

*Shapiro,* 51 F.3d at 333 (quoting H.R.Rep. No. 711 (1978), *reprinted in* 1988 U.S.C.C.A.N. 2186 (footnotes omitted)). "One of the purposes behind the reasonable accommodation provision is to address individual needs and respond to individual circumstances." *Horizon House Dev. Serv., Inc. v. Township of Upper Southampton,* 804 F.Supp. 683, 699 (E.D.Pa.1992), *aff'd,* 995 F.2d 217 (3rd Cir.1993).

¶ 11 The reasonable accommodation requirement has been applied to zoning ordinances and other land use regulations and practices. *Oxford House, Inc. v. Town of Babylon,* 819 F.Supp. 1179, 1186 (E.D.N.Y.1993)(cases cited). One example of a reasonable accommodation is to simply not enforce a restrictive covenant that operates to prevent a disabled person from living in a community. *See Martin v. Constance,* 843 F.Supp. 1321, 1326 (E.D.Mo.1994)("Even if there was a consistent policy and practice of enforcing the restrictive covenant against perceived violations, the Court finds that under the facts of this case the attempt to enforce the covenant constituted a refusal to make a 'reasonable accommodation' necessary to afford plaintiffs an equal opportunity to use and enjoy a dwelling."); *accord Hill,* 911 P.2d at 876.

¶ 12 Equal opportunity gives handicapped individuals the right to choose to live in neighborhoods of their choice because that right serves to end their exclusion from mainstream society. *Smith & Lee Assoc., Inc. v. City of Taylor,* 102 F.3d 781, 794–95 (6th Cir.1996). To succeed with their claim, aggrieved parties must show that, without an accommodation, "they likely will be denied an equal opportunity to enjoy the housing of their choice." *Id.* at 795. *See Bronk,* 54 F.3d at 429 ("concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability"). Additionally, the accommodation must be reasonable, but an accommodation is reasonable unless it requires " 'a fundamental alteration in the nature of a program' or imposes 'undue financial and administrative burdens.' " *Smith & Lee,* 102 F.3d at 795 (quoting *Southeastern Cmty. Coll. v. Davis,* 442 U.S. 397, 410, 412, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)).

¶ 13 The Association argues that it is not a reasonable accommodation to allow a person younger than the age of thirty-five years to live at the Estates because it would fundamentally alter the nature of its community. We reject this argument in conjunction with the Association's next contention.

¶ 14 The Association insists that the Estates would jeopardize its status as "housing for older persons" if it fails to uniformly enforce its CC & Rs by allowing Scott to live with his parents in an Estates home. First, allowing Scott to live with his parents in an Estates home would not have any impact on the statutory requirement that at least eighty percent of the occupied units be occupied by at least one person who is fifty-five years of age or older, *see* 42 U.S.C.

§ 3607(b)(2)(C), because at least one of the senior Canadys was fifty-five years of age or older. Thus, the Canady household would be counted in the required eighty percent of units occupied by someone at least fifty-five years old even if twenty-six-year-old Scott lived in the household.[5]

¶ 15 Second, allowing Scott to live with his parents in a home in the Estates would not indicate that the Association had failed to publish and adhere to policies and procedures that demonstrate the intent that the Estates be housing for older persons. *See* 42 U.S.C. § 3607(b)(2)(C)(ii). By enabling Scott to live with his parents in order to avoid violating the Fair Housing Acts, the Association would not be abandoning its purpose for the community but, rather, would be acceding to compliance with federal and state laws. Such a "concession" to the law could hardly be interpreted as an intent to relinquish its status as "housing for older persons."

¶ 16 Finally, the Association argues that allowing Scott to live with his parents in an Estates home would open their community to a "flood" of other persons younger than the age of thirty-five desiring to live in the Estates. However, reasonable accommodations vary depending on the facts of each case. *City of Edmonds,* 18 F.3d at 806. What is reasonable in a particular circumstance is a "fact-intensive, case-specific determination." *Janush v. Charities Housing Dev. Corp.,* 169 F.Supp.2d 1133, 1136 (N.D.Cal.2000). Thus, the Association's concern is unfounded. Indeed, the Act allows the Association to consider each request individually and to grant only those requests that are reasonable. *See id.* at 1136–37. Presumably, only a narrow group of persons would be entitled to the limited exception to the CC & Rs required by young persons who are disabled and whose disability requires housing with a person who is older than fifty-five years of age. *See Majors v. Housing Auth. of DeKalb County Georgia,* 652 F.2d 454, 458 (5th Cir. 1981)(even if "no pet" rule reasonable, reasonable inference that housing authority could make limited exception for narrow

group of disabled persons who require canine companionship).

### ATTORNEYS' FEES

¶ 17 The Canadys and Garapich request an award of their costs and attorneys' fees incurred in both this court and the trial court pursuant to A.R.S. § 41–1491.36 (1999). Section 41–1491.36 provides that a court in a fair housing action "shall award reasonable attorney fees and costs to a prevailing plaintiff." Accordingly, we grant the Canadys and Garapich their costs and attorneys' fees incurred in this appeal; the amount will be determined once they comply with Arizona Rule of Civil Appellate Procedure 21. Upon remand, they may apply for an award of fees in the trial court for attorneys' fees and costs incurred in that court.

### CONCLUSION

¶ 18 In summary, we find that the Association violated the fair housing laws by failing to make a reasonable accommodation for Scott. We therefore reverse the judgment in favor of the Association and remand for entry of judgment in favor of the Canadys and Garapich plus such further proceedings as are necessary to determine an appropriate award of costs and attorneys' fees to the prevailing parties.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge and JON W. THOMPSON, Judge.

---

5. Indeed, we can posit the situation of a member of an Estates household of age fifty-five years or older with a spouse of an age younger than thirty-five years.