125 P.3d 381

**Janet VALES, a married woman dealing with her sole and separate property, Plaintiff/Appellant,**

v.

**KINGS HILL CONDOMINIUM ASSOCI-ATION, an unincorporated association, Defendant/Appellee.**

No. 1 CA–CV 04–0816.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 22, 2005.

Jackson White, P.C. By James L. Tanner, Mesa, Attorneys for Plaintiff–Appellant.

Jones, Skelton & Hochuli, P.L.C. By Michael A. Ludwig, Randall H. Warner, Phoenix, Attorneys for Defendant–Appellee.

**OPINION**

HALL, Judge.

¶ 1 Appellant Janet Vales appeals from the trial court's orders granting summary judgment to appellee Kings Hill Condominium Association (Kings Hill) and denying her motion for a new trial. Vales, the owner of a Kings Hill condominium unit, filed a complaint in superior court challenging the validity of a "no-rental" amendment to the condominium declaration. The trial court ruled that the amendment was validly enacted and Kings Hill was entitled to judgment as a matter of law and that, in any event, Vales' action was time-barred. For the reasons discussed below, we vacate the trial court's orders and remand for proceedings consistent with this Opinion.

**FACTUAL AND PROCEDURAL HISTORY**

¶ 2 The relevant facts are undisputed. On December 29, 1969, Kings Hill, a forty-two unit condominium complex, recorded a "Declaration of Restrictions, Establishment of Board of Management and Lien Rights" (Declaration). In August 1999, Vales purchased a Kings Hill unit from her uncle's trust. From the time of her acquisition, Vales never occupied the condominium as her personal residence. Instead, she leased the property through a rental company.

¶ 3 On March 24, 2000, Kings Hill mailed ballots to the forty-two condominium owners, proposing a "no-rental" amendment to the Declaration. The ballot stated in pertinent part:

The following "No Rental Clause" has been approved by the board members of the Kings Hill Condominium to be added to our Declaration of Restrictions. We are presenting it to the Home Owners for your approval. Please read and sign.

"Notwithstanding any provision herein to the contrary, no owner of a unit shall rent or lease such unit, provided that any owner renting or leasing a unit at the time of adoption of this provision may continue renting or leasing such unit, except that such right to continue the renting or leasing of the unit shall terminate on March 26, 2000 or upon the first to occur of the following events: (1) Sale of the unit by the person(s) who are owner(s) at the time of adoption of this provision[,] (2) death of the owner(s)[,] (3) the owner(s) as of the date of adoption of this provision ceases to rent or lease the unit for more than three (3) consecutive months."

¶ 4 Section 22 of the Declaration provided that it could be amended by majority vote of the unit owners. Twenty-four of the forty-two unit owners voted to approve the amendment, with Vales casting a dissenting ballot. On May 12, 2000, Kings Hill recorded the amendment, but with the following additional language added:

No owner of a unit shall lease such unit for business, speculative investment or other similar purposes for any period of time which will extend more than three (3) years after the date of recordation of this amendment or June 1, 2003, whichever comes first.

¶ 5 After the recording of the amendment, Vales continued to lease her unit. At or

about the time her unit became vacant on March 31, 2003, Vales attempted to secure new tenants through the rental company. The rental company executed a four-month lease agreement with two prospective tenants, but the tenants cancelled the agreement when they learned that Kings Hill intended to enforce the Declaration's no-rental restriction as of June 1, 2003. With the cancellation of the lease, Vales suffered a $6600 loss in rental income.

¶ 6 On May 20, 2003, more than three years after the recording of the amendment, Vales filed a complaint against Kings Hill seeking declaratory relief and monetary damages for breach of contract and intentional interference with contract. In its answer, Kings Hill countered that the amendment's passage complied with all of the Declaration's requirements and that, in any event, Vales' complaint was time-barred. After the parties filed cross-motions for summary judgment, the trial court ruled in a signed minute entry, stating:

> That pursuant to Section 22 of the Declaration of Restrictions, all owners are subject to the regulation set forth in the [Declaration];
>
> That the amendment restricting the ability of owners to lease their premises was passed in accordance with the applicable [Declaration]. The amendment was properly enacted.
>
> That the amendment was enacted and adopted in conformity with old Chapter 4.1 of Title 33 of the Arizona Revised Statutes. That older chapter did not specify and/or mandate a particular percentage of owners that would be necessary to adopt an amendment to [the] existing [Declaration]. As a consequence, the requirement of existing A.R.S. § 33–1227(D) [requiring unanimous consent] is inapplicable to these factual circumstances.

> That under these factual circumstances, A.R.S. § 33–12[0]1(B) and (D) mandate that Section 22 of the Declarations of Restrictions [requiring passage of an amendment by a simple majority] is controlling; and
>
> Further, that A.R.S. § 33–1227(B) providing a 1 year statute of limitation is applicable.
>
> The Court thus finds that there exists no genuine issue of material fact and further that [Kings Hill] is entitled to judgment as a matter of law.

¶ 7 Vales filed a motion for new trial on the basis that the judgment was not justified by the evidence or was contrary to law. *See* Ariz. R. Civ. P. 59(a)(8). The trial court denied the motion and Vales timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(B) (2003).

## DISCUSSION

■ ¶ 8 On appeal, Vales contends that the trial court erred by determining that her claim is time-barred by the one-year statute of repose [1] set forth in A.R.S. § 33–1227(B) (2000) and by finding that the passage of the amendment complied with the Declaration's requirements.[2]

¶ 9 Summary judgment may be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c). In reviewing a summary judgment in a case involving undisputed material facts, we independently review the trial court's application of the law to the facts. *Canady v. Prescott Canyon Estates Homeowners Ass'n*, 204 Ariz. 91, 92, ¶ 6, 60 P.3d 231, 232 (App.2002). Additionally, we review the interpretation and application of statutes de novo. *Levitan v. State, Registrar of Contractors*, 201 Ariz. 225, 226, ¶ 4, 33 P.3d 796, 797 (App.2001).

---

**1.** Although the parties and the trial court referred to § 33–1227(B) as a "statute of limitations," it is more accurately described as a statute of repose because it bars any cause of action to challenge the validity of an amendment not filed within one year of recordation regardless of accrual. *See* 54 C.J.S. *Limitations of Actions* § 4

(1987) (distinguishing between "statutes of limitation" and "statutes of repose").

**2.** Vales raises several additional issues regarding the validity of the amendment that we address in a separate Memorandum Decision. *See* ARCAP 28(g).

## I. Applicability of § 33–1227(B)'s One–Year Limitations Period

¶ 10 Vales contends that the trial court erred in finding her claim time-barred pursuant to § 33–1227(B), arguing that the trial court could not "pick and choose which of the new provisions" of the Condominium Act (the Act), A.R.S. §§ 33–1201 to –1270 (2000 & Supp.2005), apply to this case. Specifically, Vales claims the trial court erred in determining she was required to challenge the amendment within one year under § 33–1227(B) while holding the unanimity requirement of § 33–1227(D) inapplicable.

¶ 11 As background to consideration of Vales' argument, we first analyze whether the trial court correctly determined that passage of the amendment required only majority approval pursuant to § 22 of the Declaration rather than unanimous approval under § 33–1227(D). When the Declaration was recorded in 1969, Title 33, Chapter 4.1, Arizona's "first generation" condominium statute, governed the formation of condominium associations. *See* A.R.S. §§ 33–551 to –561 (1985), *added by* 1962 Ariz. Sess. Laws, ch. 89, § 1. In 1985, the legislature adopted the Act, a modified version of the Uniform Condominium Act, U.C.A. §§ 1–101 to 5–110, 7 U.L.A. 101 (1978), replacing Chapter 4.1. *See* 1985 Ariz. Sess. Laws, ch. 192, § 3. Various paragraphs in § 33–1201 define the Act's applicability to condominium associations formed before its January 1, 1986 effective date. Paragraph B provides that the Act applies to all preexisting condominiums to the extent that the Act "does not conflict with the declarations, articles or bylaws of the condominium." Paragraph C explains that the Act applies to the extent that its provisions "are not in conflict with former chapter 4.1 ... or declarations, bylaws or plats of condominiums adopted pursuant to former chapter 4.1...." Paragraph D sets forth that "[a]mendments shall be adopted in conformity with the procedures and requirements specified in the declarations, bylaws and plats which were adopted pursuant to former chapter 4.1...." [3]

¶ 12 Thus, the Act governs the Declaration, which was created in 1969, only to the extent it does not conflict with any provisions in the Declaration. Additionally, the Act applies to the Declaration only to the extent it does not conflict with former Chapter 4.1. *See Mountain View Condo. Homeowners Ass'n, Inc. v. Scott,* 180 Ariz. 216, 219–20, 883 P.2d 453, 456–57 (App.1994) (holding that to the extent the provisions of the Act do not conflict with provisions of the former Chapter 4.1, the Act applies to condominiums created before January 1, 1986).

¶ 13 Because the Declaration's majority-vote requirement conflicted with the una-

---

3.  The complete text of § 33–1201 provides:

    A.  This chapter applies to all condominiums created within this state on or after January 1, 1986.

    B.  This chapter applies to all condominiums created before January 1, 1986 to the extent that this chapter does not conflict with the declarations, articles or bylaws of the condominium.

    C.  With respect to condominiums created before January 1, 1986, this chapter applies to the extent the provisions of this chapter are not in conflict with former chapter 4.1 of this title, in effect before January 1, 1986, or declarations, bylaws or plats of condominiums adopted pursuant to former chapter 4.1 of this title. The provisions of former chapter 4.1 of this title and the declarations, bylaws or plats adopted pursuant to that chapter control, except as provided in subsection D of this section.

    D.  The provisions of former chapter 4.1 of this title, in effect before January 1, 1986, do not apply to condominiums created on or after January 1, 1986. The repeal of chapter 4.1 of this title does not invalidate condominiums created pursuant to chapter 4.1 of this title or future amendment to declarations, bylaws and plats of these condominiums if the amendments are permitted by this chapter. Amendments shall be adopted in conformity with the procedures and requirements specified in the declarations, bylaws and plats which were adopted pursuant to former chapter 4.1 of this title. If amendments grant to a person any rights, powers or privileges permitted by this chapter, all correlative obligations, liabilities and restrictions in this chapter also apply to that person.

    E.  Any unit owners' association created before January 1, 1986 may elect to be subject to the provisions of this chapter by amending its condominium documents to conform with the requirements of this chapter. The amendment must be adopted in conformity with the condominium documents and must be permitted by this chapter. If an amendment grants to a person a right, power or privilege permitted by this chapter, all correlative obligations, liabilities and restrictions in this chapter also apply.

nimity requirement in the Act, the trial court accepted Kings Hill's argument that its no-rental amendment, even though it was proposed in 2000, was subject to approval by a simple majority of the unit owners. This part of the trial court's ruling was correct.

¶ 14 Neither the Declaration nor former Chapter 4.1 establish a limitation on the length of time in which a unit owner may challenge an amendment to the Declaration. Therefore, according to Kings Hill, the one-year limitation period set forth in § 33–1227(B) of the Act is applicable and the trial court correctly found that Vales' complaint, which was filed more than three years after the amendment was recorded, was time-barred.

¶ 15 Section 33–1227(B) provides: "An action to challenge the validity of an amendment adopted by the association *pursuant to this section* shall not be brought more than one year after the amendment is recorded." (Emphasis added.) Section 33–1227, entitled "Amendment of declaration," recognizes that a condominium declaration may need to be amended at various times during its life, and establishes general requirements for consent by specified percentages of unit owners before an amendment may take effect, with certain exceptions. Section 33–1227(A) states the basic rule that the declaration "may be amended only by a vote of the unit owners to which at least sixty-seven per cent of the votes in the association are allocated, or any larger majority the declaration specifies." One exception to the basic rule is § 33–1227(D), the unanimity requirement previously discussed, which provides that "an amendment shall not create or increase special declarant rights, increase the number of units or change the boundaries of any unit, the allocated interests of a unit or *the uses to which any unit is restricted,* in the absence of unanimous consent of the unit owners." (Emphasis added.) In our view, because the amendment was not subject to either § 33–1227(A)'s or § 33–1227(D)'s voting percentage provisions but was passed pursuant to the Declaration's majority-vote provision, § 33–1227(B)'s one-year limitations period, which applies to "amendment[s] adopted by the association *pursuant to this section* [,]" is

inapplicable. *See Citadel Care Ctr. v. Ariz. Dep't of Revenue,* 200 Ariz. 286, 290, ¶ 13, 25 P.3d 1158, 1162 (App.2001) (noting that statutory language should be interpreted in conjunction with other provisions of the statute); *see also Kent K. v. Bobby M.,* 210 Ariz. 279, 283, ¶ 14, 110 P.3d 1013, 1017 (2005) (explaining that when a statute is clear and unambiguous, courts apply its plain language and need not engage in any other means of statutory interpretation).

¶ 16 In the absence of an applicable statute of limitations provision within former Chapter 4.1 or the Act, we examine the general limitations statutes in Title 12, Chapter 5, to determine whether Vales' claims were time-barred. Vales alleged three counts in her complaint. In count one, as supplemented by the summary judgment proceedings, she sought a declaratory judgment that the amendment was invalid for various reasons. In count two, Vales alleged a breach of contract, asserting that Kings Hill violated the terms of the Declaration when it recorded the no-rental restriction on May 12, 2000. In count three, Vales alleged that Kings Hill committed the tort of intentional interference with contract by interfering with her contractual relationship with a tenant scheduled to commence leasing the unit in December 2003.

¶ 17 We have previously noted "the question of whether and when statutes of limitations are applicable to declaratory relief actions is a less than clear area of the law." *Western Cas. & Sur. Co. v. Evans,* 130 Ariz. 333, 335, 636 P.2d 111, 113 (App.1981). The leading approach appears to be that the applicable statute of limitations should be determined by "examin[ing] the substance of that action to identify the relationship out of which the claim arises and the relief sought...." *Solnick v. Whalen,* 49 N.Y.2d 224, 425 N.Y.S.2d 68, 401 N.E.2d 190, 195 (1980). It is clear here that the determination of rights sought by Vales in her declaratory judgment claim, namely, a declaration by the court that the amendment is invalid and violates her contract rights under the Declaration, is simply a precursor to her breach of contract claim in count two. Thus, even assuming that Vales' breach of contract

claim is governed by the general four-year limitation period of A.R.S. § 12–550 (2003) and not the longer six-year period for written contracts involving an action for debt established by A.R.S. § 12–548 (2003), counts one and two of her complaint are not time-barred because Vales filed her complaint on May 20, 2003, less than four years after Kings Hill recorded the amendment in May 2000.

█ ¶ 18 The tort claim alleged in count three, intentional interference with contract, was required to be filed within two years of accrual pursuant to A.R.S. § 12–542 (2003). *See Clark v. AiResearch Mfg. Co. of Ariz., Inc.*, 138 Ariz. 240, 243, 673 P.2d 984, 987 (App.1983) (explaining that actions for interference with contract are subject to the § 12–542 two-year limitation). As previously mentioned, ¶ 5 *supra*, two prospective tenants either withdrew from or declined to enter a rental agreement in 2003 when informed of Kings Hills' position that it would enforce the no-rental clause as of June 1, 2003. Therefore, this claim (which in any event would not have been governed by § 33–1227(B)'s one-year limitations period for challenging the *validity* of an amendment) is also not time-barred by the applicable two-year period. Therefore, the trial court erred in dismissing Vales' complaint on limitations grounds.

## II. Validity of the Amendment

¶ 19 We next consider whether the trial court appropriately granted summary judgment to Kings Hill on the basis that the no-rental amendment was passed in accordance with the applicable Declaration provisions. *See Glaze v. Marcus*, 151 Ariz. 538, 540, 729 P.2d 342, 344 (App.1986) (noting that we affirm a trial court's grant of summary judgment if it is correct for any reason). Vales contends that the amendment as recorded is "void as a matter of law" because its language varies from the language of the amendment approved by the vote of the unit owners. *See La Esperanza Townhome Assoc., Inc. v. Title Sec. Agency of Ariz.*, 142

Ariz. 235, 240, 689 P.2d 178, 183 (1984) (holding that new plat was "null and void" as an attempt to amend the declaration without meeting percentage approval requirement). Kings Hill counters that the failure to resubmit the altered amendment to the unit owners for approval was an oversight and that such a mistake should not invalidate the entire amendment, citing *Villas at Hidden Lakes Condominium Ass'n v. Geupel Construction,* 174 Ariz. 72, 76–77, 847 P.2d 117, 121–22 (App.1992), and *Watson Construction v. Amfac Mortgage*, 124 Ariz. 570, 576, 606 P.2d 421, 427 (App.1979). Kings Hill also relatedly argues that, in any event, the additional language benefitted Vales by permitting her to lease the unit for three additional years.

█ ¶ 20 Section 22 of the Declaration states that "[t]hese restrictions and covenants may be amended, in whole or in part, at any time by a majority vote of the then owners of lots within the property herein concerned." Thus, pursuant to the plain language of the Declaration, any amendment to the Declaration requires approval by a majority of the unit owners. To the extent that Kings Hill is arguing that the entire amendment as recorded is valid because the altered amendment was substantially the same as that approved by the unit owners, we disagree. The additional language added by Kings Hill imposed an absolute three-year time limitation on a unit owner's ability to rent the unit. This is not a situation, as in *Villas* and *Watson*, in which minor errors were made that did not alter the substance of the instrument.[4] Therefore, because the additional language was not approved by the unit owners, the three-year limitation is invalid. We disagree, however, with Vales' contention that the invalid addition necessarily renders the entire recorded amendment void. Instead, in order to give effect to the actual intention of the majority of the unit owners who approved the no-rental amendment, its insertion by Kings Hill may be disregarded as mere surplusage. *See Fortner v. Johnson*, 404 S.W.2d 892, 900 (Tex.Civ.

4. In *Villas,* the recorded amendment incorrectly referred to the recorded docket number of an earlier declaration that had been revoked. 174 Ariz. at 76, 847 P.2d at 121. In *Watson,* we rejected the argument that a deed of trust was defective because it lacked a caption as required by A.R.S. § 11–480 (Supp.2005). 124 Ariz. at 576, 606 P.2d at 427.

App.1966) (clause that is inconsistent with intent of contracting parties should be disregarded).

¶ 21 The remaining question is whether that portion of the recorded amendment that was approved by a majority of the unit owners entitles Kings Hill to judgment as a matter of law. The relevant portion of the approved amendment provides:

> [N]o owner of a unit shall rent or lease such unit, provided that any owner renting or leasing a unit at the time of adoption of this provision may continue renting or leasing such unit, except that such right to continue the renting or leasing of the unit shall terminate on March 26, 2000 or upon the first to occur of the following events: (1) Sale of the unit by the person(s) who are owner(s) at the time of adoption of this provision[,] (2) death of the owner(s)[,] (3) the owner(s) as of the date of adoption of this provision ceases to rent or lease the unit for more than three (3) consecutive months.

¶ 22 Initially, we note that the language of the amendment is ambiguous because it can reasonably be construed as having more than one meaning. *See Scholten v. Blackhawk Partners,* 184 Ariz. 326, 329, 909 P.2d 393, 396 (App.1995); *see also Burke v. Voicestream Wireless Corp. II,* 207 Ariz. 393, 395, ¶ 11, 87 P.3d 81, 83 (App.2004) ("[W]hether a contract is ambiguous is a question of law that we review de novo."). Was its intent to terminate the right of all unit owners from leasing their units after March 26, 2000 or were unit owners who were leasing a unit at the time of its adoption permitted to continue doing so until the occurrence of one of the three listed events?

■■■ ¶ 23 In resolving this apparent ambiguity, we are guided by rules of construction that apply to restrictive covenants. First, as with any other contract, the intent of the parties to the amended condominium declaration must be ascertained from the language of the amendment. *See O'Malley Inv. & Realty Co. v. Trimble,* 5 Ariz.App. 10, 17, 422 P.2d 740, 747 (1967). Second, "[r]e-

strictions which are not absolutely clear are to be interpreted in the ordinary and popular sense, related to circumstances under which they were used, having in mind their purpose and general situation." *Riley v. Stoves,* 22 Ariz.App. 223, 226, 526 P.2d 747, 750 (1974). Last, restrictive covenants are "strictly construed against the persons seeking to enforce them and any ambiguities or doubts as to their effect should be resolved in favor of the free use and enjoyment of the property and against restrictions." *Duffy v. Sunburst Farms East Mut. Water & Agric. Co.,* 124 Ariz. 413, 417, 604 P.2d 1124, 1128 (1979) (quoting *Grossman v. Hatley,* 21 Ariz.App. 581, 583, 522 P.2d 46, 48 (1974)); *see also Burke,* 207 Ariz. at 396, ¶ 13, 87 P.3d at 84 ("If the language of a restrictive covenant is judged to be ambiguous, it should be construed in favor of the free use of the land.").

■■■ ¶ 24 Here, the ballot setting forth the proposed amendment was mailed to unit owners only two days before March 26, 2000 and was not approved by a majority of the unit owners until April 2, 2000. In addition to the obvious problems that would arise with a retroactive restriction, a no-rental restriction effective March 26, 2000 would render the remaining contingencies meaningless before the amendment was even passed. As such, the March 26, 2000 date is unenforceable.[5]

¶ 25 After striking that language, the amendment now provides:

> [N]o owner of a unit shall rent or lease such unit, provided that any owner renting or leasing a unit at the time of adoption of this provision may continue renting or leasing such unit, except that such right to continue the renting or leasing of the unit shall terminate ~~on March 26, 2000 or~~ upon the first to occur of the following events: (1) Sale of the unit by the person(s) who are owner(s) at the time of adoption of this provision[,] (2) death of the owner(s)[,] (3) the owner(s) as of the date of adoption of this provision ceases to rent or lease the

---

**5.** In all probability, Kings Hill likewise perceived the inherent ambiguity of the amendment and sought to add the additional three-year extension language in an effort to provide a specific date after which units could not be leased in any event.

unit for more than three (3) consecutive months.

As redacted, the amendment is valid only if we can conclude that the majority of unit owners would have approved the amendment absent the unenforceable date restriction. *See O'Malley Inv. & Realty Co.*, 5 Ariz.App. at 17, 422 P.2d at 747 ("Whether a contract is entire or severable is a question of the intention of the parties, to be ascertained from the language employed and the subject matter of the contract."); *see also Randolph v. Groscost*, 195 Ariz. 423, 427, ¶ 15, 989 P.2d 751, 755 (1999) (establishing severability test for initiative measures: "We will first consider whether the valid portion, considered separately, can operate independently and is enforceable and workable. If it is, we will uphold it unless doing so would produce a result so irrational or absurd" that one would not have been adopted without the other).

¶ 26 Given that the clear intent of the unit owners who voted in favor of the amendment was to phase out the right of owners to lease their units, we believe that they would have approved the amendment absent the date restriction. Accordingly, we sever that portion of the amendment that refers to a termination date of March 26, 2000, thereby leaving the remainder of the amendment to accomplish the primary intent of the unit owners.[6] Under the amendment as we have construed it, Vales was entitled to lease her unit unless she was precluded from doing so under the third contingency, namely, that she "cease[d] to rent or lease the unit for more than three (3) consecutive months." Based on the record, it is unclear whether this terminating event occurred; therefore, Kings Hill is not entitled to judgment as a matter of law.

## CONCLUSION

¶ 27 In summary, the trial court erred when it found that Vales' complaint was time-barred pursuant to § 33–1227(B). The trial court further erred when it determined as a matter of law that the no-rental amendment prevented Vales from leasing her condomini-

um unit. As Kings Hill did not prevail on appeal, we deny its request for attorneys' fees made pursuant to A.R.S. § 12–341.01(A) (2003).

¶ 28 For the foregoing reasons and those set forth in the accompanying Memorandum Decision, we vacate the trial court's grant of summary judgment and remand for proceedings consistent with this Opinion.

CONCURRING: G. MURRAY SNOW, and PATRICIA K. NORRIS, Judges.

---

**6.** Our construction of the amendment further fulfills the intent of the unit owners by preventing subsequent purchasers from buying a unit and then leasing it as they would be able to do if we voided the amendment in its entirety.